# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| CONSULNET COMPUTING, INC., d/b/a SUCCESSWEBSITE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 04-CV-3485 |
| | : | |
| v. | : | |
| | : | |
| MEGEL DAVID MOORE, et al. | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

## RESPONSIVE BRIEF OF DEFENDANTS IN OPPOSITION TO THE MOTION *IN LIMINE* OF CONSULNET COMPUTING TO EXCLUDE PORTIONS OF THE TESTIMONY OF DEFENSE EXPERTS WILLIAM T. CLEARY AND PATRICK M. O'LEARY

Defendants, Dynamic Investment Group and David Moore (collectively "DIG" or "defendants"), respectfully submit this responsive brief in opposition to the motion *in limine* of plaintiff Consulnet Computing, Inc. ("Consulnet" or "plaintiff"), which such motion (the "Consulnet Motion") seeks to exclude certain testimony from being presented at trial by DIG's experts William T. Cleary and Patrick M. O'Leary.

Contrary to Consulnet's assertions, both Mr. Cleary and Mr. O'Leary are fully qualified through formal training and extensive and direct experience in their respective fields of marketing, website development (and comparisons) and internet marketing to be admitted as experts and testify in those areas to assist the jury in this matter.  Moreover, both Mr. Cleary's and Mr. O'Leary's expert reports and their proposed testimony are reliable and "fit" the facts and evidence so as to meet the standards and requirements of Fed.R.Evid. 702, *Daubert v. Merrill-*

*Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  Neither Mr. Cleary nor Mr. O'Leary should be excluded from testifying and assisting the fact finder in this matter.

## I.     *Introduction*

There is a continuing pattern and theme that flows through the Consulnet view of this case and its several presentations made to the Court.  First, in order to try to build and support its "story" of the surreptitious "plot of defendants" to steal a website from plaintiff, Consulnet continues to ignore certain of the uncontested record facts in this matter, and / or Consulnet takes certain facts completely out of context or misstates the facts.  Second, Consulnet has at every step attempted to confuse the legal issues or the relevant factual issues of this matter, all to its advantage.

The pending Consulnet *Daubert* Motion is a continuation of that pattern.  In short, Consulnet's arguments to exclude certain proposed testimony and sections of the expert reports of DIG experts William Cleary and Patrick O'Leary are factually incorrect and / or legally without support.  Because it is important that the record be clearly presented, and not deliberately confused, DIG provides the following brief corrections and clarifications to the Consulnet "stories" and "theories."

### A.     Consulnet Continues To Ignore The Undisputed Record Facts

Consulnet appears to be of the belief that if they can say it (whatever it is) enough times, then, of course, it has to be true.  Unfortunately for Consulnet, the facts are simply the facts and cannot be altered, recreated, or revised merely by making up a different and contrary story without any evidentiary support.

For example, Consulnet continues to assert to the Court that DIG or Moore "approved" the specific work undertaken by Frank Cundari for Scott Irvin. (*See* Consulnet Brief, at 4; Consulnet Revised Pretrial Memorandum, at 4). This statement is simply false. The *only* record evidence is that neither Moore nor DIG knew what particular effort Mr. Cundari undertook at the direction of Scott Irvin. Indeed, the deposition and affidavit testimony provided *under oath* of those individuals who would know, including Mr. Irvin, Mr. Cundari, and Mr. Moore, each stated that when Mr. Moore learned of the particular resulting draft website created by Mr. Cundari, he immediately advised both Mr. Irvin and Mr. Cundari that such a website was not proper. How Consulnet can ignore these undisputed facts and continue to misstate the record to this Court is at best baffling.

With respect to this same factual issue, Consulnet misstates portions of DIG's pretrial memorandum by improperly suggesting that "[a]ll agree that DIG employee Frank Cundari created a 'knock-off' Craig Proctor website in 2002." (*See* Consulnet Brief, at 32). This is again a deliberate attempt to deceive the Court. In fact the evidence shows that without the knowledge or approval of DIG or Mr. Moore, Mr. Cundari copied a Craig Proctor site as part of his effort to create a real estate website for Mr. Irvin. To suggest, as Consulnet does, that DIG was involved or supportive of such action is plainly false and ignores the record facts.

Consulnet also presents out of context that one website of a DIG client, Richard Wall had a copy of certain Craig Proctor material. While this is technically correct, Consulnet fails to acknowledge the further record fact that Richard Wall has admitted that he (or his wife) copied the Craig Proctor material into their website without the knowledge or approval of DIG. Again, such misstatements of the record are simply improper. While Consulnet is well aware of the record facts developed during discovery, it has instead decided to "cherry-pick" only those pieces

of information, or partial facts, to cobble together its "story" and "nefarious plot" that DIG has

stolen a website of Consulnet and then stolen the clients of Consulnet. This is no more than

improper "sharp-practice" on the part of Consulnet.

### B.   Consulnet Has Attempted To Confuse The Issues And Facts In Order To Confuse The Trier Of Fact

The core factual issue in this matter will require the jury to compare and contrast two or

more website pages taken from certain real estate websites that are commercialized by plaintiff

Consulnet and defendant DIG. This fact finding task required of the jury does not require any

special expertise or special analysis. The jury need merely to review a limited number website

pages at issue and determine whether those pages are different or similar. DIG contends that the

jury members will be ably capable of making such comparisons regarding the websites at issue.

Based upon that analysis and review, they will then be able to reach a conclusion as to the

differences and similarities between the comparative website pages.

By way of example of how Consulnet is attempting to confuse the factual issues in this

matter, Consulnet is placing primary reliance on Mr. Hokkanen's "statistical" analysis and report.

That "mathematical" analysis however is not worthy of being admitted to the jury. First, as noted

in DIG's pending *Daubert* motion, Mr. Hokkanen has no background in statistics. Second, Mr.

Hokkanen did no more in his "analysis" than what the jury in this matter is going to do anyway:

visually review and compare several real estate websites. Mr. Hokkanen is not helping the jury

with any specialized technical analysis. Instead, he and Consulnet are deliberately attempting to

confuse the jury in an effort to make Proctor's and Consulnet's website appear to be special. At

its core, the Proctor "system" and Consulnet "system" implement what is included in any

marketing process or website: offer information to a prospective client in return for information

(typically contact information) about the prospective client.  This is not magic.  This is marketing 101.  Consulnet is attempting, through the use of supposed expert analysis, to make the straightforward website page comparison confusing and improperly complex.

By contrast, where certain highly relevant facts should be readily available from Consulnet, it appears such evidence is strangely missing.  For example, Consulnet asserts that since DIG began business operations, approximately 175 customers from Consulnet have become DIG clients. (*See* Consulnet Brief, at 3).  Given that DIG has been operating for about 5 years, this means that only about 35 *customers of Consulnet* become clients of DIG each year.  Assuming solely for argument that this is correct, it highlights many of the flaws of Consulnet's arguments.  First, it is agreed that Consulnet has approximately 4000 clients.  Second, Consulnet and its experts admit that Consulnet *consistently* loses between 1000 and 2000 customers each year!  On one count, this means that Consulnet's client base, if there is such a base of clientele, is essentially replace every two to three years.  This also means that no more than 3.5% (35 out of 1000) of those clients of Consulnet who leave Consulnet each year may become clients of DIG.

This begs the question as to where the other 95% of those Consulnet clients who leave Consulnet go, and begs the question as to why Consulnet has such a huge churn rate.  The record evidence (of Richard Machado, Rick Brash and others) answers the latter of those two questions: clients leave Consulnet because of poor service, poor operations, and the desire for a different website product.

More important is that Consulnet continues to ignore the fact, and indeed is hiding from the evidentiary fact that it has no evidence of causation.  Even after years of scorched earth discovery, in which Consulnet noticed and conducted more than 15 depositions, and surely contacted everyone of its *4000* clients, Consulnet still can point to no evidence of any client or

former client who left Consulnet and became a DIG client *because* DIG "offers the same website as Consulnet at a lower price."  Consulnet has no witnesses, and indeed, no evidence showing any causation between any improper conduct on the part of DIG and the reason why any of the alleged 175 Consulnet clients left Consulnet and became a client of DIG.  Such causation is simply assumed by Consulnet and its experts.

What is startling is that Consulnet continues to cling to a belief, and suggest to the Court, that its clients are streaming to DIG because DIG is offering the same websites at a lower price that Consulnet, even though the only direct and record evidence is that the only important clients who have become DIG clients have done so because, as specifically described by these former Consulnet clients (including Richard Machado, Richard Wall, and Rick Brash), Consulnet's service operations are horrible and that they were looking for a different website product.  Not surprisingly, it is this precise evidence that Consulnet is attempting at all cost to keep from this Court and from the jury.


**II.**      **Argument**

      A.      The Proposed Expert Testimony Of Mr. Cleary And Mr. O'Leary
                Meets The Admissibility Standards of Fed.R.Evid. 702, and
                of *Daubert* and *Kumho Tire* And Should Not Be Excluded

As previously noted, it is Federal Rule of Evidence 702 that governs the admissibility of expert testimony.  More specifically, according to Rule 702, courts must allow expert testimony when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Alco Industries, Inc. v. Wachovia Corp.*, 2007 WL 3341469 (E.D. Pa. 2007).  These three elements have been described as "embod[ying] a trilogy of

restrictions on expert testimony: (1) qualification; (2) reliability; and (3) fit." *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2004). In that regard, Rule 702 provides that the court is to act as a "gatekeeper" to ensure that any specialized testimony or evidence admitted is relevant and reliable. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 589 (1993)).

Within the context of the Rule 702 admissibility elements, this Court has explained that "[i]n considering whether to admit expert testimony, it is important to remember that 'Rule 702 mandates a policy of liberal admissibility'." *Alco Industries*, 2007 WL 3341469, *3 (quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 741 (3d Cir. 1994). So long "as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process – competing expert testimony and active cross-examination – rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactory weigh its inadequacies." *Alco Industries*, 2007 WL 3341469, *3.

      B.     Mr. Cleary Is Highly Qualified To Testify About Marketing Issues; And His Proposed Testimony And Marketing Expertise Is Relevant And Reliable, And Squarely "Fits" To Assist The Fact Finder

          1.     Mr. Cleary Is Qualified To Testify About The Field Of Marketing, Including Real Estate Marketing

Consulnet acknowledges, as it must, that Mr. Cleary has extensive expertise and experience in the field of marketing. (*See* Consulnet Brief, at 2, 15) ("Cleary is arguably qualified to provide opinions about marketing in general" and "Cleary has expertise in marketing generally"). Indeed, there is no question but that Mr. Cleary's background and qualifications in marketing are very extensive. He began working in the advertising industry in 1978, serving clients such as Pepsi, Pizza Hut, and Welch Foods. (*See* Exhibit A, Expert Report of William T.

Cleary, at 2 [re-designated as not Highly Confidential]).  Much of his work for Pepsi in that early time period related to the development and use of direct response marketing campaigns. (*See* Exhibit A, at 2).  As previously presented by both parties in this case, it is the use of direct response marketing ("DRM") techniques and campaigns that are *one of the marketing elements* at issue in this case.

Several years later, in 1981, Mr. Cleary joined the marketing group of Apple Computer to assist in the marketing launch and commercialization of the Apple IIc and Apple IIe personal computer systems. (*See* Exhibit A, at 2).  This was no small effort.  As noted by Mr. Cleary, his marketing budget for the Apple II line of products in 1984 exceeded $60 million annually. (*See* Exhibit A, at 2).

In 1987, after leaving Apple Computer, Mr. Cleary formed the CKS Group (Cleary, Kvamme & Suiter), which focused on providing innovative and aggressive marketing programs to clients in a wide range of industries, including internet related industries. (*See* Exhibit A, at 2). Notably, Mr. Cleary and his firm developed and implemented marketing programs and campaigns for many Fortune 500 companies, including General Motors (automotive), Mazda (automotive), Mitsubishi (automotive), Disney (entertainment), United Airlines (travel), NBC (entertainment), MCI (telecommunications), eBay (internet auction systems), Next (computer technology), Apple Computer (computer equipment), and McDonalds (fast food). (*See* Exhibit A, at 2).  Several of the company brands that Mr. Cleary's firm assisted in marketing and bringing to the public include Yahoo, eBay, Amazon.com, AdForce and Excite. (*See* Exhibit A, at 2).

More recently, Mr. Cleary and his company, Cleary & Partners, have been assisting start-up companies and entrepreneurs in the marketing of their companies and technologies. (*See* Exhibit A, at 2).  Mr. Cleary also serves on the Santa Clara University's Business School

Advisory Board where he lectures on marketing topics including internet marketing and DRM as used on the internet. (*See* Exhibit A, at 2). Further, Mr. Cleary serves on several business Advisory Boards including those of PGP Corporation and LiveWorld. (*See* Exhibit A, at 2).

In view of this extensive (approximately 30 years of) background in marketing, as applied across a wide array of industries and businesses, there is little question that Mr. Cleary is fully qualified as an expert in the field of marketing. Consulnet's only argument is that Mr. Cleary has not specialized in *real estate* marketing. (*See* Consulnet Brief, at 15). Such an argument misses the point of the expert testimony being presented by Mr. Cleary and seeks to exclude his testimony by defining the factual issue too narrowly. Mr. Cleary is not being presented as an expert *solely* in real estate marketing, even if such an entity could exist, but is being presented to testify and assist the jury in considering factual issues relating to the history and development of marketing, and the application of different marketing techniques across various industries. Such marketing techniques include DRM, and it application to the internet and websites.

What Consulnet is again attempting to do is to confuse the jury and Court by somehow making *real estate* marketing into some form of specialized science that only Mr. Proctor and Consulnet know about. Consulnet argues for this proposition without any support, or any basis or any evidence. For example, Consulnet asserts that neither Mr. Cleary nor Mr. O'Leary have cited to the "authoritative works or treatises" in the *specialized* field of *real estate* marketing. (*See* Consulnet Brief, at 2). Yet no where does Consulnet enlighten us with an identification of any such "authoritative works or treatises" in the field of real estate marketing.

Moreover, Consulnet's citation to the decision in *Surace v. Catepillar, Inc.*, 111 F.3d 1039 (3d Cir. 1997), does not support Consulnet's argument. In *Surace*, the issue was whether an expert with a degree in electrical/mechanical engineering could specifically testify about the

human factors "phenomenon" call "habituation." *Surace*, 111 F.3d at 1055.  As understood and

explained by the court, "human factors" is not a typical area within "electrical or mechanical

engineering," but is a specialized area and discipline distinct from traditional electrical and

mechanical engineering. *Surace*, 111 F.3d at 1055.  "While we have recognized that there is no

set litmus test to qualify as an expert, . . . there is no evidence in the record to suggest that Brink

possesses sufficient knowledge of the phenomenon of habituation, either through training or

experience, to testify as an expert." *Surace*, 111. F.3d at 1055 (citation omitted).

 Distinct from the highly varied fields of human factors and electrical engineering at issue

in *Surace*, the product and service marketing techniques and systems at issue in this matter are

largely the same as applied across all industries and fields.  As explained by Mr. Cleary, and not

disputed by Consulnet, the primary purchases of most Americans are homes (real estate) and

automobiles. (*See* Cleary Report, Exhibit A, at 6, noting that the purchase of a car, "[l]ike . . . the

purchase of a house is a highly 'considered' one . . . .  There are so many considerations that go

into the purchase of a house.  This is never an impulse buy").  The marketing of such products to

the general public is also very similar.  Mr. Cleary so noted in his report and deposition that

marketing techniques, such as DRM, are used in all business and fields. (*See* Exhibit A, at 5 to

6).  Indeed, Mr. Cleary has used such techniques within many of the wide range of marketing

projects he has worked on, including the marketing of products and services such as computer

equipment, automobiles, and on-line auction services.

 According to the unsupported view of Consulnet, marketing in the "real estate" field is

somehow drastically different or foreign from marketing in any other field, including internet

product and service sales.  Consulnet presents this assertion *without any support* for such a

position.  Consulnet would have the Court believe that Proctor and Consulnet are the only

experts in the self-proclaimed "specialized" field of using direct response marketing on the

internet in real estate websites.  However, no such magic field of marketing exists.  Marketing is

marketing and has for years been applied across most all businesses, from real estate sales to

automobile sales to computer equipment sales for many years.  As explained by Mr. Cleary in his

report,

> "Direct response marketing also became incredibly effective in the mid-
> 90's, and is now being utilized in a powerful new medium called the Internet. . . .
> Apple and Dell [for whom Mr. Cleary worked or was retained to provide
> marketing expertise] were effective at launching such [direct response marketing]
> programs in the PC industry, and automotive companies have deployed programs
> to the web as well. . . . *Direct response marketing has become an integral part of
> most web-based programs*." (*See* Exhibit A, at 6) (emphasis added).

Consulnet is seeking to define the necessary expertise in this matter as being limited

solely to *real estate* marketing.  Such a proposition is without support and ignores the record

evidence and facts of the case.  Indeed, such a proposition is merely a scheme to keep DIG's

expert from explaining to the jury that the "systems" of Craig Proctor and Consulnet are little

more than standard marketing schemes that have been used in other sales and marketing fields

for many years.

In view of Mr. Cleary extensive background and experience in marketing, he is well-

qualified to testify about the development of marketing techniques and how such techniques and

systems are used in many industries, including real estate sales, and as used on the internet.

2.   Mr. Cleary's Report And Proposed Testimony About Marketing
      <u>Techniques Is Relevant And Reliable And Should Not Be Excluded</u>

Mr. Cleary's expert report and proposed testimony relating to the development of

marketing techniques and systems prior to and on the internet, including the systems used by

Craig Proctor, Consulnet and DIG is relevant and reliable.  As summarized above, and provided

in more detail in Mr. Cleary's expert report (*see* Exhibit A), Mr. Cleary is a marketing expert,

with more than 30 years experience in all areas of marketing, including of most recent vintage,

the use of marketing systems to market products and services on the internet.  One of the factual

issues to be considered by the jury, is whether the use of DRM marketing by Craig Proctor and

Consulnet are unique to the real estate industry, or unique to Craig Proctor and Consulnet.  Mr.

Cleary experience in marketing, and his proposed testimony on this issue is highly relevant.

Consulnet's apparent issue with Mr. Cleary's report, conclusions, and proposed testimony

about the Craig Proctor DRM systems is simply that Consulnet does not agree with his opinions.

The fact that they do not agree with his analysis or conclusions is, however, of no import.  More

to the point, such questions and issues are more appropriately to be presented to and considered

by the fact finder.  Indeed, "[t]he reliability of evidence goes 'more to the weight than to the

admissibility of the evidence.'" *U.S. v. Williams*, 235 Fed.Appx. 925, 928 (3d Cir. 2007); *United

States v. Velasquez*, 64 F.3d 844, 849 (3d Cir. 1995); *Alco Industries*, 2007 WL 3341469, *3.  In

order to be admissible, evidence need only be sufficiently reliable to help the trier of fact. *In re

Paoli R.R. PCB Litigation*, 35 F.3d 717, 744 (3d Cir. 1994).

Given the effort by Consulnet to attempt to confuse the factual issues to be considered by

the jury, and to somehow make Craig Proctor's and Consulnet's website system as something

special, the testimony by Mr. Cleary will surely assist the trier of fact to understand what it is that

Mr. Proctor and Consulnet may have developed and, equally important, whether the Proctor and Consulnet marketing techniques have been previously applied across other fields and disciplines. "Once the foundation for admissibility required by *Daubert* has been established, concerns about the validity of an expert's conclusions should not result in the exclusion of the expert's testimony. Rather, such concerns should be presented to the jury through cross examination, presentation of contrary evidence and careful instruction on the burden of proof. *Rock v. Arkansas*, 483 U.S. 44, 61, 107 S.Ct. 2704 (1987)." *U.S. v. Williams*, 235 Fed.Appx. 925, 929 (3d Cir. 2007).

As noted above, DIG expects that Consulnet will attempt to confuse the jury with, if admissible, the "statistical" analysis of Mr. Hokkanen. Such a mathematical analysis, as argued in DIG's pending Daubert motion to preclude certain testimony of Mr. Hokkanen, is no more than junk science. As noted in DIG's pending motion, Mr. Hokkanen has no background in statistics. Moreover, his analysis is a strange application of statistics that completely confuses the simple task that the jury will have to do anyway: visually review and compare several real estate websites. Hokkanen is not helping the jury with any specialized technical analysis. He is instead seeking to confuse the jury in an effort to make Proctor's system and Consulnet's website implementation as appearing unique.

The expert review and report of Mr. Cleary and his proposed testimony relating to the background, history and use of marketing techniques and systems across various fields is directly relevant to the factual issues to be determined by the jury. More important, such testimony is directly relevant to test the assertions of several of Consulnet's witnesses and experts, including Mr. Hokkanen. Accordingly, Mr. Cleary's marketing testimony is relevant, reliable and should be admitted at trial.

3.    Mr. Cleary's Report And Proposed Testimony About Marketing
Techniques Will Assist The Fact Finder And Does Fit The Evidence

The expert report and proposed testimony of Mr. Cleary are both highly relevant to the

issues to be considered by the jury, and will assist the jury in understanding the differences

between the several websites that the jury will be asked to review.  In that regard, Consulnet has

attempted to "specialize" the direct response marketing system of Mr. Proctor and Consulnet as

being unlike any other marketing programs previously used.  This is simply not supported by the

record evidence.  Moreover, Consulnet has failed to provide any evidence to support such a

position.

Defendants DIG will need to be able to counter such unsupported statements offered by

Consulnet.  In that regard, the expertise and experience of Mr. Cleary within the field of

marketing is precisely relevant to explain the type of marketing systems employed across many

industries, and explain how those systems have been applied to the internet and to website

marketing.  The "fit" requirement under Rule 702 is designed to ensure that the expert testimony

"will assist the trier of fact to understand the evidence or to determine a fact in issue."

Fed.R.Evid. 702; *U.S. v. Mathis*, 264 F.3d 321, 335-36 (3d Cir. 2001).  Mr. Cleary's testimony

will surely assist the trier of fact to understand the history and use of various marketing systems,

both before the advent of the internet and now, as such systems are used on the internet.

Contrary to Consulnet's argument, Mr. Cleary's testimony need not match Consulnet's

theory.  To be admissible, such testimony should be presented by a qualified expert, which Mr.

Cleary is; it should be relevant and reliable, which such testimony is; and finally, it should be

able to assist the fact finder, or "fit" the issues to be considered by the jury.  This latter

requirement, however, is "not intended to be a high one, . . . and its principle is not dissimilar to

the Federal Rules general provision that, unless otherwise specified, '[a]ll relevant evidence is admissible' and '[e]vidence which is not relevant is not admissible.'" *Mathis*, 264 F.3d at 335-36 (citations omitted).

Mr. Cleary's testimony does "fit" in that it is relevant to the factual issues to be considered by the jury, and it "will assist the trier of fact to understand the [marketing] evidence or to determine a [marketing] fact in issue." Fed.R.Evid. 702; *Mathis*, 264 F.3d at 335-36. Accordingly, Mr. Cleary's expert report and proposed testimony should be permitted to be presented at trial.

     C.     Mr. O'Leary Is Also Qualified To Testify About The Development Of The DIG Website Products; His Proposed Testimony About The Creation Of The DIG Website Products And The Comparison With The Consulnet Website Products Is Reliable; And His Proposed Testimony Will Assist <u>The Fact Finder In Considering The Factual Issues In This Matter</u>

     1.     Mr. O'Leary Is Qualified To Testify About The Development Of The DIG Website Products And <u>The Comparison With Consulnet Website Products</u>

While Consulnet concedes that Mr. O'Leary is amply qualified to testify about his analysis, review and comparison of the DIG and Consulnet website products, Consulnet seeks to prevent Mr. O'Leary from testifying about certain marketing or real estate issues. (*See* Consulnet Brief, at 34 to 43). This however misses the point of Mr. O'Leary's report and his proposed testimony, and again attempts to confuse the particular issues to be determined by the fact finder.

Mr. O'Leary is an expert in the field of computer website development, including the creation, implementation, use, and commercialization of websites. Mr. O'Leary has specific background, experience, and expertise is in each of these areas. (*See* Exhibit B, Expert Report of Patrick M. O'Leary, at 2). The specific computer programming and internet experience of Mr. O'Leary expands more than 25 years. (*See* Exhibit B, at 2). His particular computer language

expertise is in Basic, Pascal, C/C++, Assembler, FORTRAN, PHP, and HTML, while he has primarily worked on MS-DOS and Unix class equipment. (*See* Exhibit B, at 2).

With respect to his employment background, Mr. O'Leary has worked as a computer programmer and analyst for NEC (in their telecommunications division), for Lee Data assisting the Regional Bell Operating Companies with database synchronization, and later for American Airlines (in the Operations Research Division) again working on database synchronization. (*See* Exhibit B, at 2).

Of more particular relevance to the factual issues requiring comparison of various websites, in the mid-1990s, Mr. O'Leary founded the internet based company MatchMaker.com, being a singles / dating and social networking website. (*See* Exhibit B, at 2). Mr. O'Leary formed MatchMaker.com, and grew the business from a single employee to a company employing 124 people working in eight different departments. (*See* Exhibit B, at 2). Mr. O'Leary eventually sold MatchMaker.com to Lycos in the year 2000. (*See* Exhibit B, at 2). With respect to his experience with MatchMaker.com, Mr. O'Leary essentially built the company from the ground up. As relating to his experience and expertise with respect to website businesses, he notes, "[i]n my career, I have worked on just about every technical and business aspect of the Internet." (*See* Exhibit B, at 3).

Mr. O'Leary's expertise is broader that simply the programming and coding of a website system. As part of the creation and building of MatchMaker.com, Mr. O'Leary also developed extensive experience in using marketing techniques and systems on the internet. Counsel for Consulnet specifically questioned Mr. O'Leary about such experience at his deposition. (*See* Exhibit C, Deposition Transcript of Patrick O'Leary, at 60 to 67; at 74 to 79). Mr. O'Leary testified about the various types of marketing techniques and devices that were used and

implemented at MatchMaker.com.  He specifically testified that he used "free trials," "photographs," "surveys," and direct response marketing such as "sample profiles." (*See* Exhibit C, at 60 to 64, 74 to 79).  Accordingly, while at MatchMaker.com, Mr. O'Leary extensively applied various marketing concepts and techniques in commercializing the company website on the internet.

In view of this background, experience and expertise, Mr. O'Leary is well qualified to testify about reviews and comparisons he completed relating to the DIG website products and Consulnet website products, including any marketing techniques that may be used in those websites.  Moreover, as Mr. O'Leary testified during his deposition, he spoke with Mr. Cleary about Mr. Cleary's review of the websites at issue to obtain a further understanding and confirmation about the marketing systems being used by the respective websites at issue. (*See* Exhibit C, at 21, 23).

As such, Mr. O'Leary's training, experience and expertise in website programming and development, and his experience in building an internet company, including the marketing of the company's website, sufficiently qualify him to testify in these areas.

        2.     Mr. O'Leary's Report And Proposed Testimony About The Development Of The DIG And Consulnet Website Products, And Comparison Of The Operation Of Those Websites Is Relevant To The Factual Issues To Be <u>Considered By The Jury, Is Reliable And Should Not Be Excluded</u>

The proposed testimony of Mr. O'Leary relating to the development of the DIG and Consulnet website products, and the comparison of the flow and operation of the respective websites is relevant, reliable, and does meet the standards of Fed.R.Evid. 702 and *Daubert*. Similar to the assertions raised by Consulnet against Mr. Cleary's proposed testimony, Consulnet also takes issue with certain of Mr. O'Leary's testimony.  Such issues though, at their core are no

more than that Consulnet does not agree with Mr. O'Leary's analysis, review and opinion. There is no relevancy problem with Mr. O'Leary's proposed testimony regarding his comparison between the Consulnet website product and DIG website product. Indeed, such testimony by Mr. O'Leary is highly relevant to the factual issues relating to the comparison of the DIG and Consulnet websites. Further, in view of Mr. O'Leary's expertise, and the scope of his review of the DIG and Consulnet websites, the testimony of Mr. O'Leary meets the *Daubert* standard of reliability necessary to be admitted at trial. *U.S. v. Williams*, 235 Fed.Appx. 925, 929 (3d Cir. 2007).

As explained above, it is expected that Consulnet will attempt to rely on the testimony and "analysis" of Mr. Hokkanen (if that testimony is not precluded from admission at trial, as sought by DIG). Mr. Hokkanen, who is a real estate agent, software designer, and "retired" lawyer, submitted a "statistical" analysis to attempt to show that (a) Craig Proctor developed a direct response marketing system for real estate agents that was later translated to the internet by Consulnet, and that (b) "DIG copied the direct response marketing system developed by Proctor/ConsulNet and that they are still using the Proctor/Consulnet system." At least two fatal flaws exist relating to Mr. Hokkanen's report and conclusions. First, Mr. Hokkanen has not experience or background or training in any statistical or mathematical analyses, and second, his inventive "study" was undertaken using a very limited number of websites, out of the thousands of various real estate related websites available. More to the point, Mr. Hokkanen's study and report is of little to no use to the jury. His use of numbers or "statistics" does no more than confuse what is an obvious and straightforward factual task – comparison of two websites – that the jury will be called upon to complete.

If not otherwise precluded from admission at trial, DIG will need to rebut and counter any such testimony and evidence.  Mr. O'Leary's review and testimony directly addresses the factual issue of comparing the differences and similarities between the Consulnet and DIG website products.  Consulnet's issue is simply that Mr. O'Leary's testimony does not comport with the "story" that has been created by Consulnet.  Whether Consulnet agrees with Mr. O'Leary's review, analysis and opinion is, however, not the analysis or proper testing for proposed expert testimony.  The correct standard and consideration is whether such testimony and opinion will assist the trier of fact. *Williams*, 235 Fed. Appx. at 927.  As noted above with respect to Mr. Cleary, the Third Circuit has explained that "[t]he reliability of evidence goes 'more to the weight than to the admissibility of the evidence.'" *Williams*, 235 Fed.Appx. at 928; *Velasquez*, 64 F.3d at 849.  Questions about the validity of Mr. O'Leary's review, if any, should be presented for consideration by the jury, which will be assisted by such review and testimony in considering the various factual issues to be presented to the jury. *Rock*, 483 U.S. at 61; *Alco Industries*, 2007 WL 3341469, *3; *Williams*, 235 Fed.Appx. at 929.

> 3.    Mr. O'Leary's Report And Proposed Testimony About The Development Of The DIG And Consulnet Website Products, And Comparison Of The Operation Of Those Websites Will Assist The Jury In Determining The Factual Issues In This Matter

Similar to the argument presented above, relating to Mr. Cleary's review, report and testimony, Mr. O'Leary's proposed testimony relating to the review and comparisons he completed of the DIG websites and Consulnet websites, (*see generally* Exhibit B, at 14 to 27, 29 to 34), is highly relevant, and will assist the jury in considering the factual issues of website comparisons.

As with the issue with Mr. Cleary's review, Consulnet is attempting to prevent the admission of any analysis or evidence that may be contrary to its story that Craig Proctor and Consulnet have invented direct response marketing as used on the internet for real estate websites.  While Consulnet may make that argument, it has failed to provide evidentiary support for such a proposition.  DIG must defend and counter the story being presented by Consulnet. Part of its rebuttal and counter to such a position will be submitted through the expert review and comparisons of Mr. Cleary and Mr. O'Leary.  In that regard, the respective reviews, analyses, reports and testimony of Mr. Cleary and Mr. O'Leary are very relevant to the factual issues of operation of the respective websites, the marketing systems (if any) used in the websites, and ultimately, how different or similar are the respective websites.  More to the point with respect to the "fit" requirement, both Mr. Cleary's and Mr. O'Leary's report and proposed testimony "will assist the trier of fact" to fully understand the website comparison evidence being presented, and will assist the jury to determine the several facts at issue. Fed.R.Evid. 702; *Mathis*, 264 F.3d at 335-36.

Mr. O'Leary is well-qualified to testify about the website comparison he completed, including comparison of the operation of the respective websites.  Such testimony by Mr. O'Leary is very relevant to this factual issues to be presented to the jury.  And his review, report and proposed testimony will assist the jury in understanding and considering the website comparisons to be determined.

Accordingly, Mr. O'Leary's comparative review and analysis, as provided in his expert report (*see* Exhibit B), and his proposed testimony based upon that review, does "fit" the issues in this matter in that such testimony is relevant to those issues, and such testimony "will assist the trier of fact to understand the [website comparisons] evidence or to determine a [website

comparison] fact in issue." Fed.R.Evid. 702; *Mathis*, 264 F.3d at 335-36.  Mr. O'Leary's expert report and testimony should not be excluded or limited from admission at trial.

III.     <u>**Conclusion**</u>

For the foregoing reasons, defendants DIG respectfully request that the Court enter an Order, in a form as attached to this Responsive Brief, denying the Motion *in limine* of Consulnet Computing seeking to exclude certain portions of the proposed testimony of DIG's experts William T. Cleary and Patrick M. O'Leary.

Dated:  January 7, 2008                          Respectfully submitted,

_____
Kevin W. Goldstein
Brian P. Seaman
Stradley Ronon Stevens & Young, LLP
Great Valley Corporate Center
30 Valley Stream Parkway
Malvern, PA  19355-1481
(610) 640-5800

Attorneys for Defendants
M. David Moore and
Dynamic Investment Group

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| CONSULNET COMPUTING, INC.,<br>d/b/a SUCCESSWEBSITE, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 04-CV-3485 |
| | : | |
| v. | : | |
| | : | |
| MEGEL DAVID MOORE, et al. | : | JURY TRIAL DEMANDED |
| | : | |
| Defendants. | : | |

**ORDER**

AND NOW, this _____ day of _____, 2008, upon consideration

of the Motion *in Limine* of plaintiff to exclude certain expert testimony of defendants David

Moore and Dynamic Investment Group, the responsive brief of defendants, and the argument of

counsel, it is hereby ORDERED, ADJUDGED, and DECREED that plaintiff's Motion to

exclude certain expert testimony of William T. Cleary and Patrick M. O'Leary is DENIED.

_____
                                                                                      J.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 7, 2008, a true and correct copy of the foregoing **Responsive Brief of Defendants In Opposition to the Motion *In Limine* of Consulnet Computing To Exclude Portions of the Testimony of Defense Experts William T. Cleary and Patrick M. O'Leary** was served upon the below noted counsel of record via first-class mail and was made available for viewing and copying through the Court's ECF system.

> David E. Landau, Esquire
> Wolf Block Schorr and Solis-Cohen LLP
> 1650 Arch Street, 22nd Floor
> Philadelphia, PA  19103
> (counsel for plaintiff Consulnet Computing, Inc.)

_____
Kevin W. Goldstein