UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSULNET COMPUTING, INC., d/b/a
SUCCESS WEBSITE,

             Plaintiff

  v.

MEGEL DAVID MOORE, et al.,

             Defendants

  v.

STEVE RAITT, et al.,

             Counter-Defendants.

CIVIL ACTION

No. 04-3485

**MEMORANDUM/ORDER**

Before the court are the parties' cross-motions *in limine* to exclude testimony by four proposed expert witnesses, two for the plaintiff and two for the defendants, under Federal Rule of Evidence 702 and *Daubert v. Merrill-Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *See* Docket Nos.121, 122. Both parties have filed responses. *See* Docket Nos. 125, 126. The court held a hearing on the motions on January 11, 2008.[1]

---

[1] Pursuant to the court's order entering the parties' stipulation on confidentiality, the parties are required to move to file under seal any filings making reference to documents designated by either party to be "confidential." Defendants have moved to file their *in limine* motion under seal because it makes reference to ConsulNet's experts' reports, which are marked "For Attorney's Eyes Only." *See* Docket No. 124. However, ConsulNet has not moved to file its own papers under seal, despite having attached the same reports as exhibits. Defendants' prudent motion will therefore be denied.

**I. Background**

This case concerns two companies in the business of creating websites for real estate agents. In brief, plaintiff ConsulNet Computing, Inc., d/b/a Success Website ("ConsulNet"), alleges that defendant Megel David Moore posed as a real estate agent and signed a contract for a ConsulNet website, and that Moore and his company, defendant Dynamic Investment Group, Inc., d/b/a Web Agent Solutions ("DIG"), copied the ConsulNet website in order to start DIG's competing business. These actions, ConsulNet contends, amount to (1) breach of Moore's contract with ConsulNet, under Pennsylvania law; (2) intentional breach of contract and the duty of good faith, under Canadian law; (3) violations of U.S. and Canadian copyright law; and (4) intentional interference with ConsulNet's contractual relationships with its clients, under Pennsylvania law.

ConsulNet has moved to exclude portions of the proffered expert testimony by two of the defendants' liability experts, Patrick O'Leary and William Cleary. Defendants (hereinafter, "DIG") have moved to exclude testimony by one of ConsulNet's liability experts, John Hokkanen, as well as portions of the testimony of ConsulNet's damages expert, Wayne Hoeberlein. For the reasons that follow, the court will grant both motions in part.

**II. Legal Standard**

Under Federal Rule of Evidence 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in

issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." The enumerated requirements are often described in shorthand as "qualification, reliability, and fit." *See, e.g.*, *In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 156 (3d Cir. 1999). Under the rule announced in *Daubert v. Merrill-Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and expanded in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), district courts must ensure that experts—scientific and otherwise—will offer testimony that is methodologically sound and relevant to the facts of the case before admitting their testimony. *See Daubert*, 509 U.S. at 590–91; *Kumho*, 526 U.S. at 149.

Nevertheless, "Rule 702 mandates a policy of liberal admissibility." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994). "As long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process — competing expert testimony and active cross-examination — rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies." *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) (quoting *Ruiz-Troche v. Pepsi Cola Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998)). Thus, "*Daubert* . . . . demands only that the proponent of the evidence show that

the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Id*. (quoting *Ruiz-Troche*, 161 F.3d at 85).

### III. John Hokkanen

Mr. Hokkanen is a California real estate broker who has for more than a decade used the Internet in his real estate business. He is also a lawyer. ConsulNet has proffered testimony from Hokkanen "on the technical and structural similarities between the DIG/ConsulNet websites, in comparison to various other real estate-related websites on the Internet." CN Rev'd Pre-Tr. Mem. 7 (Docket No. 118). Hokkanen's report compares DIG's real estate websites to those created by ConsulNet and other competitors. Hokkanen concludes that defendants did copy ConsulNet's work: "Review of the words, concepts and style used by ConsulNet and DIG sites shows that DIG uses the same words, concepts and style of the Proctor/ConsulNet marketing campaigns. Words were changed and phrases have been rearranged, but the concepts and approach have remained the same." Hokkanen Rep. 1.5. Specifically, DIG's websites use the same technique of enticing customers to give their contact information to realtors by promising, in exchange, restricted content. Hokkanen also concludes that "[Megel] David Moore's lack of substantive knowledge of real estate practice and direct response marketing in the real estate field makes it inconceivable that he designed and implemented the DIG system without copying the system and approaches developed by Craig Proctor and ConsulNet." *Id*.

Mr. Hokkanen's report includes both qualitative and quantitative aspects. He

visited thirty-five real estate websites (most but not all of them from the area around San Diego, California, a real estate market with which he is familiar) and "analyzed" (that is, clicked) their links to see whether the links led to "restricted" content, as ConsulNet's websites' links do. He then used a Microsoft Excel spreadsheet to generate graphs and statistics from his raw data regarding the number and kinds of links on the websites. The graphs, which appear in section 2.1 of his report, are meant to illustrate the distribution of certain kinds of links on the websites of ConsulNet, DIG, and a group of "other vendors." The graphs show greater overlap between ConsulNet and DIG than between ConsulNet and "other vendors."

    DIG objects to the quantitative analysis in Mr. Hokkanen's report on four grounds: (1) that Hokkanen does not have sufficient expertise in statistics to give an opinion based on a statistical analysis; (2) that his results are an unreliable because they are based on a small, non-random sample; (3) that the complicated (and unreliable) statistics will not help the jurors, because they will be able to obtain the same information from Hokkanen's qualitative testimony and from looking at the websites themselves; and (4) that the statistics will confuse or mislead the jury, and should therefore be excluded under Fed. R. Evid. 403.

    ConsulNet has responded (1) that an expert need not be a statistician to employ basic statistical calculations in his report; (2) that Mr. Hokkanen's "soft science" and "qualitative" inquiry, which he "translated . . . into quantitative terms using Microsoft

Excel," "is not rendered inadmissible based on . . . . [c]oncerns over the size and selection process of Hokkanen's sample" because such concerns go to the weight rather than the admissibility of the evidence; (3) that DIG will be able to cross-examine Hokkanen on his methods, since he described them in his report; and (4) that Hokkanen's analysis will help jurors "more fully understand the complexities of this case." CN Resp. 11-12, 14 (Docket No. 125). At oral argument, counsel for ConsulNet conceded that Hokkanen did not undertake a study of the entire industry of real estate website providers, and that his quantitative analysis was not admissible as an expert opinion thereon. Counsel described Hokkanen's graphs as "visual representations" of the survey Hokkanen conducted in San Diego.

The court will admit Mr. Hokkanen's qualitative comparisons of specific real estate websites' functions, which DIG has not challenged. However, the court will exclude, under Rule 403, Hokkanen's quantitative analysis of the thirty-five real estate websites from San Diego and elsewhere. This quantitative evidence is likely to confuse the jury and waste a considerable amount of time. Although ConsulNet asserts that Hokkanen does not purport to have studied the entire real estate website industry, his graphs themselves do not make clear their limited scope. Furthermore, they are far from self-explanatory, and — given Hokkanen's unorthodox method and small sample size — invite sharp attack. As a consequence, introducing the quantitative analysis will likely require lengthy direct testimony devoted to Hokkanen's methodology, lengthy cross-

examination regarding its substantial limitations, direct testimony from a DIG expert regarding the same, and, of course, cross-examination of the DIG expert. All this, for the sake of a "visual representation" of an opinion to which Hokkanen can testify (and illustrate with slides of the websites) without delving into statistics.

Because Mr. Hokkanen's quantitative analysis is interwoven with the balance of his report, the court will tentatively exclude the report as a whole, without prejudice to ConsulNet's filing a motion *in limine* for the admission of excerpts.

## IV. Wayne Hoeberlein

Mr. Hoeberlein is ConsulNet's damages expert. His report tallies five categories of damages to ConsulNet as a result of DIG's alleged wrongful conduct. DIG has challenged the admission of Hoeberlein's report on the ground that Hoeberlein's calculations simply assume that DIG caused these damages to ConsulNet, without citing sufficient evidence of causation and without considering other possible causes for the damages. At oral argument, ConsulNet conceded that Hoeberlein's report would be admissible only to the extent that ConsulNet put on evidence of causation. Accordingly, the court will defer ruling on the admissibility of Hoeberlein's report. The court anticipates admitting Hoeberlein's report, or portions thereof, upon ConsulNet's presenting evidence of causation.

## V. William Cleary

Mr. Cleary has decades of experience in marketing on the Internet and in other media. Most recently, he has run a company that provides advice on business plans to

entrepreneurs. DIG proposes to call Cleary as an expert regarding "the Craig Proctor 'direct response' marketing system, and the alleged implementation of the Proctor system into a website by Consulnet" as well as "the Proctor marketing 'system' or 'concepts' or 'programs' as compared to other well known marketing techniques applied in most every industry." DIG Rev'd Pre-Tr. Mem. 20 (Docket No. 120). Cleary's report draws two conclusions: first, that both parties' websites employ marketing techniques that are not unique to ConsulNet and DIG, but rather are used in numerous industries; and second, that defendant Moore had sufficient experience when he founded DIG to do so without copying ConsulNet. ConsulNet has moved to exclude several opinions from Cleary's report.

First, ConsulNet has moved to exclude Mr. Cleary's interrelated opinions that, "[a]fter looking at the approximately 25 real estate web sites in the real estate industry, I am convinced to a reasonable degree of certainty that current marketing trends in the real estate industry are pervasive and not unique"; that "[d]irect response [marketing] is applied consistently in [the real estate] market"; and that "there is nothing unique or proprietary in [Craig Proctor's] methods or his total system." Cleary Rep. 4, 8. ConsulNet objects that these opinions are not reliable, because Cleary has no background in the real estate industry, admitted in his deposition that he formed this opinion largely on the basis of a few evenings of "web surfing," took no notes, and could not identify precisely which websites he reviewed. *See* Cleary Dep.103-04, 146-47. The court agrees

that the opinions ConsulNet has moved to exclude — regarding industry-wide trends in real estate websites — are not the product of a reliable method, and those opinions will be excluded. However, as ConsulNet conceded at oral argument, Cleary is qualified to identify marketing techniques in real estate websites. Accordingly, his testimony as to which marketing techniques he has identified in specific websites, and any similarities he finds between specific websites, will be admitted.

Second, ConsulNet moves to exclude Mr. Cleary's opinion that, at the time he founded DIG, defendant Moore had sufficient experience in website development and marketing to found DIG without copying ConsulNet's websites. In particular, Cleary cited Moore's experience developing the website theprotrader.com, Moore's "solid contacts in the real estate industry," and his familiarity "with the marketing techniques taught by Jay Abraham." Cleary Rep. 11. ConsulNet notes that, in his deposition, Cleary admitted that he had never looked at theprotrader.com or spoken with anyone who worked with Moore on theprotrader.com; that Cleary had, in forming this opinion, relied solely on his conversations with Moore and a brief conversation with another of the defendants' expert witnesses, Patrick O'Leary; and that Cleary was not familiar with Jay Abraham's work and had never heard of him before this litigation. Cleary Dep. 171-72, 176, 182-83. ConsulNet contends that this opinion should be excluded as unreliable because it is based solely on Cleary's credibility judgment of Moore's own account of his experience — a determination that should be left to the jury. The court agrees that,

although Cleary is qualified to testify to the skills and know-how necessary to start a business like DIG, his assessment of Moore's prior experience is not the product of reliable inquiry. Accordingly, Cleary's opinion that Moore had the requisite experience to found DIG without copying ConsulNet will be excluded.

Third, ConsulNet moves to exclude Cleary's ultimate opinion that he does "not see any evidence that DIG's real estate website solution is a duplicate of, a copy of, or even a derivation of the ConsulNet website solution." Cleary Rep. 12. ConsulNet contends that this opinion is unreliable because it is not sufficiently related to the facts of the case: Cleary's report does not address the alleged evidence of actual copying by DIG; Cleary does not base his opinion on a careful analysis of the evolution of DIG's websites; and, insofar as Cleary simply compares the look of the websites, his opinion usurps the jury's function. At oral argument, counsel for DIG defended Cleary's opinion only insofar as Cleary found that the websites' structures did not share a common "flow" and employed differing marketing techniques. The court will admit the testimony defended by DIG and will exclude the broader opinion which ConsulNet has moved to exclude.[2]

In sum, the court finds that Mr. Cleary is qualified to testify as an expert in marketing (as ConsulNet concedes). However, for the reasons given above, the court will

---

[2] ConsulNet's motion addresses an additional opinion from Mr. Cleary, that defendant Moore is accomplished in his field and has achieved strong results with DIG. At oral argument, counsel for defendants agreed not to elicit testimony from Cleary regarding Moore's degree of success. Accordingly, this portion of ConsulNet's motion is granted as unopposed.

grant ConsulNet's motion to exclude Cleary's opinions concerning 1) trends in the entire real estate website industry; 2) the extent of defendant Moore's experience; and 3) comparisons between the DIG and ConsulNet websites, except insofar as such comparisons draw directly on Cleary's expertise in marketing and its implementation on websites (as opposed to comparisons that a lay person could make).  Because these excluded opinions are woven throughout Cleary's report, the court will tentatively exclude Cleary's written report, without prejudice to DIG's filing a motion *in limine* to introduce admissible excerpts from the report.

**VI. Patrick O'Leary**

Mr. O'Leary has more than 25 years of experience in computer programming.  He was also the founder and CEO of a dating website, matchmaker.com.  In that job, he was responsible for the website's marketing.  His report gives a technical account of the evolution in DIG's websites; compares the structure and function of ConsulNet's and DIG's websites; compares the content on DIG, ConsulNet, and other companies' websites; gives an account of defendant Moore's experience with the Internet, real estate, and marketing; and opines on ConsulNet's "customer support and service issues."  He also responds at length to ConsulNet's experts' reports, including the allegation that DIG websites contain code copied from ConsulNet website.

ConsulNet has moved to exclude portions of Mr. O'Leary's report.  First, ConsulNet contends that Mr. O'Leary is not qualified to offer expert opinions on marketing or the real estate business, or defendant Moore's level of experience in those

areas. O'Leary admitted in his deposition testimony that his marketing knowledge is largely based on his own common sense, *see* O'Leary Dep. 179, and he has never been in the real estate business. DIG does not defend O'Leary's qualifications to testify as a marketing or real estate expert, *per se*, but responds that O'Leary's experience with matchmaker.com and other websites qualifies him to offer opinions about "the marketing systems being used by the respective websites." DIG Resp. 17 (Docket No. 126).

The court will admit testimony from O'Leary in the area of website programming and development. In particular, the court will admit his comparisons of the structures and functions of the ConsulNet and DIG websites; his opinion regarding whether the "BradBuzby Code" was copied by DIG from ConsulNet; and his opinion that, based on his analysis of the DIG websites' evolving structure and functions as well as the features of theprotrader.com, the DIG websites were developed without copying. Necessarily interwoven with such testimony will be discussion of the websites' functions — for instance, the use of information-collecting functions that fall within the realm of "direct response marketing." O'Leary need not be admitted as an expert in marketing to describe the websites' functions. The court will, of course, entertain objections at trial if O'Leary's testimony veers outside his area of expertise — for instance, into industry-wide generalizations about real estate websites.

Second, ConsulNet objects to Mr. O'Leary's chart comparing the articles available to potential real estate buyers and sellers on ConsulNet's, DIG's, and four other

competing companies' websites. *See* O'Leary Rep. 24-25. The chart's apparent purpose is to illustrate that the articles alleged to have been copied by DIG from ConsulNet also exist on numerous other websites. ConsulNet objects that this chart is not the product of reliable analysis, since O'Leary could not explain in his deposition how he produced the chart or which were the competing websites he examined. The court (1) agrees that the chart was not produced by a reliable method and (2) questions what expertise O'Leary brought to this exercise. For these reasons, the court will exclude the chart.

Third and finally, ConsulNet objects to the section of Mr. O'Leary's report addressing ConsulNet's "customer support and service issues." *See* O'Leary Rep. 34. This section consists of O'Leary's conclusion, after reading depositions and speaking with defendant Moore and other real estate agents, that ConsulNet's clients were dissatisfied with ConsulNet's customer service. As ConsulNet contends, this opinion is not the product of O'Leary's expertise, and the court will not admit it.

As with the other experts' written reports, the court will tentatively exclude O'Leary's report as a whole, without prejudice to ConsulNet's filing a motion *in limine* for the admission of excerpts.

**Conclusion**

For the reasons stated above, the court will grant each party's motion in part. An appropriate order follows.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSULNET COMPUTING, INC., d/b/a SUCCESS WEBSITE,<br><br>         Plaintiff<br><br>    v.<br><br>MEGEL DAVID MOORE, et al.,<br><br>         Defendants<br><br>    v.<br><br>STEVE RAITT, et al.,<br><br>         Counter-Defendants. | CIVIL ACTION<br><br>No. 04-3485 |

**Order**

**AND NOW**, this 11th day of February, 2008, upon consideration of the motions *in limine* filed by defendants Dynamic Investment Group and Moore (Docket No. 121) and plaintiff ConsulNet Computing (Docket No. 122), the responses in opposition (Docket Nos. 125, 126), and defendants' motion to file their motion *in limine* under seal (Docket No. 124), and for the reasons stated in the accompanying memorandum, **IT IS ORDERED**:

1. The defendants' motion to file their motion *in limine* under seal (Docket No. 124) is **DENIED**;

2. Defendants' motion *in limine* to exclude portions of the defendants' expert witnesses testimony (Docket No. 121) is **GRANTED** in part and **DENIED** in part:

    a.    John Hokkanen will not be permitted to offer an opinion based on his statistical analysis of the thirty-five websites. He may, however, give his opinion based on his qualitative assessment of the technical and structural similarities between ConsulNet and DIG websites, as compared with the websites of specific competitors. Plaintiff will not be permitted to enter into evidence the portion of Hokkanen's report containing his quantitative analysis. The court will also tentatively exclude the balance of Hokkanen's report, without prejudice to plaintiff's filing a motion *in limine* to admit relevant excerpts that do not fall afoul of the court's ruling in this order.

    b.    Wayne Hoeberlein will be permitted to offer his expert opinion on the amount of damages suffered by plaintiff, on condition that plaintiff puts on evidence of causation. The court will defer ruling on the admissibility of Hoeberlein's report.

3.    Plaintiff's motion *in limine* to exclude portions of defendants' expert witnesses' testimony (Docket No. 122) is **GRANTED** in part and **DENIED** in part:

    a.    William Cleary will not be permitted to offer his opinions regarding general trends in the real estate industry. As an expert in marketing, he may offer opinions regarding marketing methods generally and identify their use in specific real estate websites.

           Cleary will not be permitted to offer his opinion that defendant Moore had sufficient knowledge to start DIG without copying ConsulNet. However, he may testify to the time, skills, and know-how necessary to start a business like DIG.

           Cleary will not be permitted to offer his opinion that defendant Moore is accomplished in his field and has achieved strong results with DIG.

           Cleary will be permitted to offer his opinion that the DIG and ConsulNet websites are differently structured and employ different marketing techniques. If he offers an opinion regarding whether or not DIG copied ConsulNet, such an opinion must be founded upon his area of expertise, namely marketing on the Internet and in other media.

        The court will tentatively exclude Cleary's report, without prejudice to defendants' filing a motion *in limine* to admit excerpts that do not fall afoul of the court's ruling in this order.

    b.    Patrick O'Leary may offer his expert opinions regarding the structures and functions of the websites at issue in this case, including the technical evolution of theprotrader.com and the alleged copying of code by defendants. He will not be permitted to testify regarding similarities between the content of the articles posted on the websites. Defendants will not be permitted to introduce into evidence the chart appearing at pages 24 and 25 of his report. The court will tentatively exclude the balance of O'Leary's report, without prejudice to defendants' filing a motion *in limine* to admit excerpts that do not fall afoul of the court's ruling in this order.

4.    The parties shall carefully instruct their own experts regarding the court's ruling in this order.

5.    The parties shall file any other motions *in limine* no later than March 25, 2008, and their trial memoranda and proposed points of charge no later than April 1, 2008.

        /s/ Louis H. Pollak
        _____
        Pollak, J.