UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSULNET COMPUTING, INC., d/b/a SUCCESS WEBSITE,<br><br>        Plaintiff<br><br>  v.<br><br>MEGEL DAVID MOORE, et al.,<br><br>        Defendants | CIVIL ACTION<br><br>No. 04-3485 |

**OPINION**

Pollak, J.                                                                                                        July 29, 2008

      This case concerns two companies in the business of creating websites for real estate agents. In brief, plaintiff ConsulNet Computing, Inc. ("ConsulNet"), a Canadian company based in Toronto, alleged that defendant Megel David Moore posed as a real estate agent and signed a contract for a ConsulNet website; that Moore and his Pennsylvania-based company, defendant Dynamic Investment Group, Inc. ("DIG"), started DIG's competing business by copying plaintiff's websites; and that defendants successfully marketed their websites to plaintiff's clients (and others) as cheaper versions of plaintiff's websites. These actions, plaintiff claimed, amounted to a breach of Moore's contract with plaintiff (which provided that Moore could use his ConsulNet website only for his own personal real estate business); intentional interference with plaintiff's contractual relationships with its clients; and copyright infringement. After hearing two

weeks of evidence, a jury found that Moore was liable for breach of contract; that both defendants were liable for intentional interference with contractual relations; that defendants' conduct with respect to the intentional interference was "outrageous"; and that both defendants were liable for some, but not all, of the alleged instances of copyright infringement.[1]

Before the court is defendants' motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial, along with plaintiff's response, and defendants' reply. *See* Docket Nos. 196, 211, 213. For the reasons given below, the court will deny defendants' motion.

I.

Defendants seek a judgment notwithstanding the jury's verdict. A motion to alter or amend a judgment brought under Federal Rule of Civil Procedure 59(e) "must rely on one of three major grounds: (1) an intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice.'" *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995) (internal quotation marks and brackets omitted). Defendants rely on the third ground, the need to correct manifest injustice.

"When deciding a motion for judgment notwithstanding the verdict, the trial judge

---

[1] Because it emerged during trial that defendants had failed to disclose financial information necessary to the determination of damages, the trial was bifurcated into liability and damage phases. The parties are presently undertaking further discovery related to damages, which will be addressed in a subsequent proceeding.

must determine whether the evidence and justifiable inferences most favorable to the prevailing party afford any rational basis for the verdict." *Bhaya v. Westinghouse Elec. Corp.*, 832 F.2d 258, 259 (3d Cir. 1987).  Where a party moves for a judgment notwithstanding a jury's verdict on the ground that the jury's general verdict is inconsistent, the court has a "'duty to attempt to read the verdict in a manner that will resolve inconsistencies.'" *Mosley v. Wilson*, 102 F.3d 85, 90 (3d Cir. 1996) (quoting *Los Angeles v. Heller*, 475 U.S. 796, 806 (1986) (Stevens, J., dissenting)); *accord Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 123-24 (3d Cir. 2004); *see, e.g.*, *Loughman v. Consol-Pennsylvania Coal Co.*, 6 F.3d 88, 107 (3d Cir. 1993).  The Third Circuit has repeatedly held that "'a verdict must be molded consistently with a jury's answers to special interrogatories when there is *any view* of the case which reconciles the various answers.'" *Citizens Fin.*, 383 F.3d at 123 (quoting *McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 763 (3d Cir. 1990) (emphasis in original)).

In the alternative, defendants move for a new trial.  Under Federal Rule of Civil Procedure Rule 59(a), a court may grant a new trial "for any of the reasons which new trials have heretofore been granted."  Fed. R. Civ. P. 59(a).  Among other such reasons, a court may grant a new trial to prevent injustice or to correct a verdict that was against the weight of the evidence.  *See Corrigan v. Methodist Hosp.*, 234 F. Supp. 2d 494, 498 (E.D. Pa. 2002).  The decision whether to grant a new trial is within the sound discretion of the trial court.  *Allied Chem. Corp. v. Daiflon, Inc*., 449 U.S. 33, 36 (1980).  However, "[a] new trial is appropriate only when the verdict is contrary to the great weight of the

evidence or errors at trial produce a result inconsistent with substantial justice." *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735-36 (3d Cir. 1988).

II.

Defendants have moved for a judgment notwithstanding the verdict, or, in the alternative, for a new trial, on two grounds: first, that the jury rendered an inconsistent verdict with respect to copyright infringement, and second, that there was insufficient evidence of "outrageousness."

A.

The jury rendered the following verdict in response to the verdict form's questions related to copyright infringement (the numbers correspond to the verdict form):

2.  Do you find that the defendants or either of them infringed the copyright for the webpage (Don't Pay Another Cent in Rent to Your Landlord), copyright registration number 5-875-725?
    i.  Dynamic Investment Group
        _____ No         __X__ Yes
    ii. Megel David Moore
        __X__ No                 _____ Yes

3.  Do you find that the defendants or either of them infringed the copyright for the webpage (Marketing Your Home For All Its Worth), copyright registration number 5-875-728?
    i.  Dynamic Investment Group
        __X__ No                 _____ Yes
    ii. Megel David Moore
        __X__ No                 _____ Yes

4.  Do you find that the defendants or either of them infringed the copyright for the ConsulNet Success website, copyright registration number 5-875-729?
    i.  Dynamic Investment Group
        _____ No         __X__ Yes
    ii. Megel David Moore
        _____ No         __X__ Yes

     5.     Do you find that the defendants or either of them infringed one or more Canadian copyrights for the ConsulNet website?
          i.     Dynamic Investment Group
                _____ No          \_\_X\_\_ Yes
          ii.    Megel David Moore
                _____ No          \_\_X\_\_ Yes

Defendants and plaintiff agree that the jury's answer to question two — finding DIG but not Moore liable for infringement of the "Don't Pay Another Cent in Rent to Your Landlord" webpage — most likely reflects a jury determination that DIG was secondarily liable (via contributory or vicarious infringement) with respect to that page. *See* Def. Mot. 10; Pl. Resp. 9-10 & n.6.[2] Plaintiff put on evidence — through the cross-examination of a DIG client, Tracy Wall — that DIG's client had added this material (and other ConsulNet materials) to her DIG website.

Defendants contend that the jury's determinations are inconsistent in two respects. First, the jury found that the ConsulNet homepage — "Marketing Your Home For All Its Worth" — was not infringed, but did find that the website as a whole was infringed. This is inconsistent, defendants contend, because "the Consulnet registered homepage is essentially the same page used in each of the Consulnet copyrighted websites" and is "the 'most important web page in an entire site.'" Def. Mot. 8 (quoting the testimony of ConsulNet's real estate website expert). Defendants note that, of the fifty-three separate

---

[2] Defendants cite only contributory infringement as the likely theory the jury accepted; plaintiff cites both vicarious and contributory infringement as possible theories accepted by the jury. The jury was instructed on both theories. *See* Docket No. 184, Tr. 5/1/08, at 21-22.

webpages included in the registered compilation of the whole ConsulNet website, the jury was only presented with "several comparisons between the homepage, and two or three linked (second) pages, in comparison to the homepage and second pages of certain DIG websites." Def. Mot. 10. Accordingly, defendants imply, given the jury's finding of no infringement with respect to the homepage, the jury's finding of infringement with respect to the entire website must have related to the two or three linked second pages — which defendants contend were not the main focus of plaintiff's evidence at trial, *see* Def. Reply 3; *see also* Def. Reply 5 (asserting that "[f]or a finding of infringement to be supported" with regard to the copyright for the entire website, made up of fifty-three webpages, there would have to be "substantial similarity between a DIG website *and the 53 separate items* making up" the entire website (emphasis in original)).

Undertaking its "duty to attempt to read the verdict in a manner that will resolve inconsistencies," *Mosley*, 102 F.3d at 90, the court finds that this purported inconsistency in the jury's verdict is easily resolved because plaintiff introduced sufficient evidence at trial from which a jury could conclude that defendants copied portions of the ConsulNet website other than the homepage (which the jury found was not infringed). As plaintiff notes, this evidence includes sixteen ConsulNet webpages — other than the ConsulNet homepage — that were found on various DIG websites. *See* Pl. Resp. 8-9 (citing exhibit numbers). Furthermore, defendants could be liable for infringing the entire ConsulNet website without having infringed each and every one of the 53 pages; as the court instructed the jury, even a small amount of copying qualifies as infringement if the

portion copied is important to these websites and their operation, commercial appeal, or usefulness. *See* Docket No. 184, Tr. 5/1/08, at 20-21 (jury instruction). Moreover, there was also evidence to support a jury determination that, while the ConsulNet homepage itself was not infringed, the overall look and feel of the ConsulNet website as a whole was copied by defendants, based on overall similarities in their structure, flow, images, design, and language. *See* Pl. Resp. 8 & n.5; Docket No. 184, Tr. 5/1/08, at 20 (jury instruction on "total concept and overall feel").

Second, and relatedly, defendants contend that the jury's answers to questions four and five (holding both defendants liable for infringement with respect to the entire ConsulNet website) are inconsistent with the jury's verdict on question two and three (holding only DIG liable for infringing "Don't Pay Another Cent," and neither defendant liable for infringing the homepage), because the jury indicated through questions two and three that the only copyright infringement that occurred was done by DIG's clients (for which DIG, but not Moore, was liable). Def. Mot. 10.

The court agrees with plaintiff that this second purported inconsistency is also easily resolved. As defendants themselves suggest, the finding of liability solely for DIG with respect to the "Don't Pay Another Cent" webpage likely reflects a finding of secondary infringement with respect to that webpage, based on DIG client Wall's admission that she posted the infringing content on her DIG website herself. Def. Mot. 10. And, as discussed above, plaintiff put on evidence of infringement of numerous other

ConsulNet webpages by defendants — aside from the home page and "Don't Pay Another Cent" — continuing to the month before trial. Defendant Moore testified that he was primarily responsible for the content of the DIG pages (other than content uploaded by clients, such as "Don't Pay Another Cent"). There was therefore sufficient evidence on the basis of which the jury could have found Moore, as well as DIG, either directly liable for infringing content that the jury found was added by DIG and Moore, or secondarily liable based on the numerous and ongoing instances of DIG's clients' posting infringing content.

The court will therefore deny defendants' motion for judgment notwithstanding the verdict or a new trial with respect to the copyright claim.

B.

The second ground on which defendants move for judgment notwithstanding the verdict, or, in the alternative, for a new trial, is that the evidence presented at trial does not support the jury's finding that defendants' conduct with respect to its intentional interference with plaintiff's contractual relations with its clients was "outrageous."

Under Pennsylvania law, a court may award punitive damages only if an actor's conduct is "outrageous": "malicious, wanton, willful, or oppressive, or shows reckless indifference to the interests of others." Pa. SSJI (Civ.) § 14.00; *accord Johnson v. Hyundai Motor America*, 698 A.2d 631, 639 (Pa. Super. 1997). "Conversely, '[p]unitive damages may not be awarded for misconduct which constitutes ordinary negligence such

as inadvertence, mistake and errors of judgment.'" *Hall v. Jackson*, 788 A.2d 390, 403 (Pa. Super. 2001) (quoting *McDaniel v. Merck. Sharp & Dolune*, 533 A.2d 436, 447 (Pa. Super. 1987)).

Citing *Intermilo, Inc. v. I.P. Enterprises, Inc.*, 19 F.3d 890 (3d Cir. 1994), defendants contend that an award of punitive damages in this case is manifestly unjust because the evidence adduced at trial showed that "any contacts [to plaintiff's clients] were for [defendants'] own competitive business interests" and occurred over only a brief time period, and that only 15% of DIG clients had been ConsulNet clients.  DIG Mot. 12; *see Intermilo*, 19 F.3d at 894 (finding, under New Jersey law, that defendant was not liable for punitive damages because the defendant's conduct was not "wantonly reckless" or based on an "evil motive" but was rather "motivated primarily by [his] own business interests, rather than by some desire to harm" the plaintiff).

Plaintiff asserts in response that the record contains sufficient evidence from which a jury could conclude that "the sordid story of Moore and DIG shows a maliciousness, a willfulness and a recklessness so overwhelming as to give rise to a finding of truly 'outrageous' conduct."  Pl. Resp. 15.  Plaintiff's support for this contention is a three-page account of the evidence presented at trial.  Plaintiff does not identify which evidence, if any, demonstrates maliciousness.  Plaintiff's only reference to reckless conduct is plaintiff's assertion that "[d]ozens of exact or substantially similar copies of the Proctor/ConsulNet special reports and campaigns have appeared on

defendants' websites in the 2005 to 2008 timeframe, evidencing defendants' reckless disregard for ConsulNet's copyrights." Pl. Resp. 14.

Mindful of defendants' burden in seeking a judgment notwithstanding the verdict or a new trial, the court cannot find that the jury's verdict with respect to "outrageousness" works manifest injustice, or that it is against the great weight of the evidence. "[T]he purpose of punitive damages is to punish outrageous and egregious conduct done in a reckless disregard of another's rights; it serves a deterrence as well as a punishment function." *Johnson*, 698 A.2d at 639. There was considerable evidence presented at trial from which a reasonable jury could conclude that defendants' conduct manifested reckless indifference to plaintiff's interests and was therefore deserving of punishment — even if defendants' conduct was partially or primarily motivated by their own business interests, which they were apparently willing to follow above all other considerations, including the lawfulness of their conduct. Viewing the evidence in the light most favorable to plaintiff, defendants poached plaintiff's clients in the following manner: Defendant Moore obtained a 60-day free trial of a ConsulNet website through the misrepresentation that he was a real estate agent. He then broke the contract he signed with ConsulNet by using the information he gleaned from reviewing his trial ConsulNet website to start his own competing real estate website company, DIG. Defendants Moore and DIG then copied ConsulNet's websites in form and content, in the process infringing ConsulNet's copyrights. They marketed their infringing websites to

ConsulNet's clients and others with the pitch that defendants' websites were nearly identical to — yet cheaper than — ConsulNet's websites.  Defendants' marketing efforts targeted ConsulNet clients in particular; for instance, they telephoned ConsulNet clients to convince them to switch to DIG, and created form cancellation notices for ConsulNet clients to send to ConsulNet.  (Although there was testimony at trial concerning other companies in the business of selling real estate websites, defendants created such a form only for ConsulNet clients.)  The result of this course of conduct was that, in defendants' first year in business, 80% of their clients were former ConsulNet clients.  The court cannot find that the jury's verdict — finding that this conduct evinced a reckless disregard for ConsulNet's interests — works manifest injustice or is against the great weight of the evidence.

      An appropriate order follows.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CONSULNET COMPUTING, INC., d/b/a SUCCESS WEBSITE,<br><br>  Plaintiff<br><br> v.<br><br>MEGEL DAVID MOORE, et al.,<br><br>  Defendants | CIVIL ACTION<br><br>No. 04-3485 |

**ORDER**

AND NOW, this 29th day of July, 2008, for the reasons stated in the accompanying memorandum, **IT IS ORDERED** that defendants' motion to alter or amend the judgment, or, in the alternative, for a new trial, *see* Docket No. 196, is **DENIED**.

/s/ Louis H. Pollak
_____
Pollak, J.

-12-