# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CONSULNET COMPUTING, INC., d/b/a
SUCCESS WEBSITE,

          Plaintiff

  v.

MEGEL DAVID MOORE, et al.,

          Defendants

CIVIL ACTION

No. 04-3485

## MEMORANDUM

The liability issues in this case were resolved by a jury trial that took place during

April, 2008 and May, 2008.  This court bifurcated the damages phase of the case, and

those issues will be decided following a bench trial.  Before the court are the parties'

cross-motions *in limine* to exclude testimony at that bench trial.  On October 15, 2008,

plaintiff filed its Omnibus Motion in Limine, and defendants filed three separate motions

*in limine*.  *See* Docket Nos. 227, 228-230.[1]  Both parties have filed responses.  *See* Docket

Nos. 233, 234.

---

[1] Pursuant to the court's order entering the parties' stipulation on confidentiality, the parties are required to move to file under seal any filings making reference to documents designated by either party to be "confidential."  Accordingly, plaintiff moved to file the exhibits to its *in limine* motion under seal, and this court granted that motion. *See* Docket Nos. 231, 232.

## I. Background

The case-in-chief concerns two companies in the business of creating websites for real estate agents.  In brief, plaintiff ConsulNet Computing, Inc., d/b/a Success Website ("ConsulNet"), alleged that defendant Megel David Moore posed as a real estate agent and signed a contract for a ConsulNet website; that Moore and his company, defendant Dynamic Investment Group, Inc., d/b/a Web Agent Solutions ("DIG"), started their business by copying plaintiff's websites; and that defendants successfully marketed their websites to plaintiff's clients (and others) as cheaper versions of plaintiff's websites. These actions, plaintiff claimed, amounted to (1) breach of Moore's contract with ConsulNet, under Pennsylvania law; (2) intentional breach of contract and the duty of good faith, under Canadian law; (3) violations of U.S. and Canadian copyright law; and (4) intentional interference with ConsulNet's contractual relationships with its clients, under Pennsylvania law.

After hearing two weeks of evidence, a jury returned special interrogatories and verdict findings that Moore was liable for breach of contract; that both defendants were liable for intentional interference with contractual relations; that defendants' conduct with respect to the intentional interference tort was "outrageous"; that both defendants were liable for some, but not all, of the alleged instances of copyright infringement;[2] and that

---

2 The jury found that Moore, but not DIG, infringed the copyright for the webpage "Don't Pay Another Cent in Rent to Your Landlord," copyright registration number 5-

defendant infringed on one or more Canadian copyrights of the ConsulNet website.  *See* Jury Verdict Form, Docket No. 189 (filed May 12, 2008).  On July 30, 2008, this court denied defendants' Rule 59 motions.  *See* Docket No. 217.

Following trial, this court granted ConsulNet's motion for a preliminary injunction on June 6, 2008.  *See* Order, Docket No. 206.  The preliminary injunction forbid defendants "from direct and personalized solicitation, or acceptance, of any further clients for the provision of any real estate website or related product or service if such clients purchased goods or services from either Craig Proctor Productions, Inc., or ConsulNet Computing, Inc., or attended a Craig Proctor Seminar, since 6/1/03."  *Id.*[3]

ConsulNet has moved to 1) exclude certain testimony by defendants' damages expert, Richard Gering, and 2) preclude defendants from trying certain issues that, according to ConsulNet**,** were already resolved by the trial on liability.[4]  Defendants have moved to 1) exclude the report of ConsulNet's expert witness Raymond F. Dovell; 2) exclude certain portions of the errata sheets submitted by ConsulNet in the wake of ConsulNet expert Wayne D. Hoeberlein's deposition on August 11, 2008; and 3) preclude

---

875-725; that both defendants infringed the copyright for the webpages "Marketing Your Home For All Its Worth," copyright number 5-875-728, and the ConsulNet Success Website, copyright number 5-875-729; and that both defendants infringed one or more Canadian copyrights for the ConsulNet website.

[3]     As established at trial, Craig Proctor runs seminar workshops from which ConsulNet culls clients.

[4]     Although ConsulNet's motion often speaks to limiting the scope of evidence presented by defendants at the coming damages trial, its proposed order only explicitly seeks to limit – with the one notable exception of foreclosing all of defendants' challenges to ConsulNet's disgorgement calculations – Gering's expert testimony.

ConsulNet's experts from providing any expert testimony regarding damages alleged by ConsulNet in connection with ConsulNet's providing free websites to its Platinum level clients.  For the reasons that follow, the court will grant plaintiff's motion in part and deny all three of defendants' motions.

## II. ConsulNet's Motion

ConsulNet seeks to exclude those portions of Gering's testimony a) identifying over one million dollars in "business expenses" that Gering says should be deducted from ConsulNet's disgorgement recovery;[5] b) stating that there should be certain deductions or exclusions for damages that ConsulNet's expert does not support with adequate causation evidence; c) contending that damages should be apportioned between the "front end" and "back end" of defendants' websites and individual webpages; and d) based on hearsay evidence, exclusively on conversations with David Moore, or on deposition testimony and/or other non-record evidence.  ConsulNet asks this court to enter its proposed order, which ConsulNet contends would properly confine the scope of trial to issues of damages and injunctive relief.

---

[5]     As noted in note 4, *supra*, ConsulNet's proposed order actually seeks to bar defendants entirely from deducting or offsetting ConsulNet's disgorgement calculations. In effect, however, ConsulNet's request is aimed at Gering's report.

A.  *Business Expense Deductions*

ConsulNet contends that Gering relies upon insufficiently specific evidence of defendants' business expenses.  ConsulNet further contends that defendants' claimed business expense deductions should be limited because defendants' copyright infringement was "willful."

Defendants have the burden of proving any legitimate business expenses, and they must meet that burden by a showing of "'some specificity.'"  *See Allen-Myland v. IBM Corp.*, 770 F. Supp. 1014, 1024 (E.D. Pa. 1991) (citations omitted).  However, the Third Circuit has expressed a strong preference for the admissibility of expert testimony under Federal Rule of Evidence 702.  *See Kannankeril v. Terminix Intern., Inc.,* 128 F.3d 802, 806 (3d Cir. 1997) (citations omitted).  "As long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversary process — competing expert testimony and active cross-examination — rather than excluded from jurors' scrutiny for fear that they will not grasp its complexities or satisfactorily weigh its inadequacies."  *United States v. Mitchell*, 365 F.3d 215, 244 (3d Cir. 2004) (quoting *Ruiz-Troche v. Pepsi Cola Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998)).

No Third Circuit case mandates that, in order to be admissible, allegations of business expense deductions must include any specific documents.  In one Second Circuit case relied on by ConsulNet, despite the fact that defendant's "evidence of its costs was sorely lacking in documentation," the court actually affirmed a deduction. *See Gaste v.*

*Kaiserman*, 863 F.2d 1061, 1070-71 (2d Cir. 1988) (declining to overturn a jury verdict that granted a lower reduction in costs than defendants had requested).  One court has held explicitly that the burden of proving legitimate business expenses is a matter to be determined by a factfinder, not through a motion in limine.  *See Malletier v. Dooney & Bourke, Inc.,* 525 F. Supp.2d 558, 657 (S.D.N.Y. 2007).

In the instant matter, defendants' requested business expense deductions are supported by their production of a summary expense report, cancelled checks, and credit card statements, and defendants represent that these statements will be further supported by testimony at trial.  And while a court's finding that a defendant's conduct was "willful" can affect statutory damages under the Copyright Act, 18 U.S.C. § 504, the jury made no finding at the liability stage that defendants' copyright infringement was "willful" or otherwise knowing, reckless, or deliberate.[6]  *See* Jury Verdict Form, Docket No. 189.  Thus, Gering's testimony on business expenses will not be excluded, and any deficiency in corroboration will go to the weight of the evidence at trial.

---

[6]    The Copyright Act does not define "willful."  One court has held that in order to be willful, defendants must have had "actual knowledge or reckless disregard for whether its conduct infringed upon the plaintiff's copyrights." *Original Appalachian Artworks, Inc. v. J.F. Reichert, Inc.,* 658 F. Supp. 458, 464 (E.D. Pa. 1987).  In the instant matter, the jury did find that defendants' intentional interference with contractual relations  was "outrageous," but it made no similar finding as to defendants' copyright infringement.

2. *Causation/Relitigation*:

The crux of ConsulNet's argument about "relitigation" is that because each of ConsulNet's successful claims at trial necessarily incorporated causation, the issue of causation should not be raised at the trial about damages.  ConsulNet identifies, and objects to, numerous instances where Gering's expert report alleges that ConsulNet's evidence does not sufficiently show a causal link between defendants' malfeasance and ConsulNet's damages.  Besides the Gering report's allegations of insufficient causation, ConsulNet also objects to defendants' plans to offer other testimony at trial that ConsulNet believes attempts to retry the issue of liability.[7]

Each of ConsulNet's successful breach of contract and tortious interference claims included, as an essential element, a finding that damage was caused to ConsulNet.  These successful claims did not, however, resolve the extent of those damages.

The copyright claims in this case require findings on damages that consider the issue of attribution.  A copyright owner is only permitted to recover "profits of the infringer that are *attributable* to the infringement."  17 U.S.C. § 504(b) (the "Copyright Act").  Even in a bifurcated case where, as here, liability for infringement has been proven, courts should consider the extent of the infringer's profits.  *See, e.g., Bouchat v. Baltimore Ravens Football Club*, *Inc.,* 346 F.3d 514 (4th Cir. 2003) (considering the extent to which an infringer's profits were actually attributable to the infringement).

---

[7]     Although ConsulNet does not request these exclusions in its proposed order, it makes requests to this effect in the text of its motion *in limine*.

This court will, therefore, permit evidence of causation that goes to the issue of the *extent* of damages attributable to defendants.  The issue for this court to resolve is whether any of the proposed evidence or testimony challenged by ConsulNet directly contradicts the jury verdict regarding liability.  None of it does.

In ¶2 of its proposed order, ConsulNet challenges five specific statements in the Gering Report.[8]  None of these five statements alleges a general lack of liability on the

---

[8] ConsulNet's proposed order reads, in pertinent part:

2. Defendants' expert witness Richard Gering may not offer the following opinions or calculations at trial concerning causation/liability:

(a) "It is my opinion that the Hoeberlein Final Report . . . ignores causation and other reasons why customers switched [website providers.]"

(b) "The Hoeberlein Final Report provides no basis or analysis that shows a causal link that would explain how ConsulNet could have 'lost' revenues because clients chose also to become a client [sic] of DIG."

(c) "The Hoeberlein Final Report provides no causal link between ConsulNet's decision to offer free hosting to Platinum clients and any actions of DIG.  Testimony in this matter indicates that ConsulNet's lack of customer service and technical problems created dissatisfaction with Platinum clients. As such, ConsulNet was obligated to offer free hosting to Platinum clients. Assuming that the testimony regarding poor customer service and other technical problems are correct, there can be no lost profits damages in Exhibit F."

(d) "The damages methodology in Exhibit F ignores causation and is inconsistent with other testimony that indicates other causal links, is speculative, and contains numerous unsupported assumptions. As such, there can be no damages for this category."

(e) "The Hoeberlein Final Report ignores competition in the marketplace.  Implicit in the damages calculation is that no change in pricing or competition will occur for 5.8 years. We searched Google for real estate web hosts, real estate web content, and real estate coaches and found several providers. Further, the Hoeberlein Final Report fails to address the impact of the underlying housing market on present and future damages."

part of defendants.  Three of the statements identified by ConsulNet attack only the methodology of ConsulNet's expert; they do not state that ConsulNet cannot obtain damages.  These three statements – labeled "a," "b," and "e" in ConsulNet's proposed order – plainly do not contradict the jury's verdict.

The remaining two statements identified by ConsulNet do conclude that there can be "no damages" for a certain category of harm, but they do so without challenging any conclusion reached by the jury.  These two statements – labeled "c" and "d" in ConsulNet's proposed order – challenge the propriety of awarding ConsulNet damages on the basis of Exhibit F to the Hoeberlein report.  Exhibit F details Hoeberlein's calculation of damages in connection with ConsulNet's alleged need to provide free websites to its Platinum clients due to defendants' unlawful actions.  Whether the provision of free websites is attributable to defendants is an entirely distinct question from whether defendants are liable at all in the causes of action already determined.  Assessing damages in connection with the free websites requires determining whether defendants' wrongful acts – the unlawfulness of which cannot be challenged – were in fact the cause of ConsulNet's decision to provide free websites.  This remains an open question.

The balance of the expert testimony and other evidence that ConsulNet objects to is permissible to the extent that it is admitted for the limited purpose of determining the *extent* of damages, as opposed to the *existence* of damages.  Particularly in view of the fact that ConsulNet's proposed order does not specify exactly what testimony it wishes to

bar at trial, a limiting instruction by this court – which will be reiterated to the parties at trial – is sufficient.

### 3.  Apportionment of Front End and Back End

For damages purposes, the Gering report apportions defendants' website into a "front end" and "back end."  First, Gering contends that back end profits are not at issue in this dispute, and therefore he deducts 67% from DIG's profits off the top.  *See* Pl. Mot. Limine Exh. 2 at 13 (Gering Report), Docket No. 227 (filed Oct. 15, 2008).  Second, Gering asserts that, of the front end profits that remain, DIG's profits should be reduced by an additional 50% because the jury expressly found that defendants did not infringe on ConsulNet's homepage.  *Id.* at 13-14.

Under Federal Rule of Evidence 702, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  The enumerated requirements are often described in shorthand as "qualification, reliability, and fit."  *See, e.g.*, *In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 156 (3d Cir. 1999).  Under the rule announced in *Daubert v. Merrill-Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and expanded in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), district courts must ensure that experts – scientific and otherwise – will offer testimony that is methodologically sound and relevant to the facts of the case before admitting their testimony.  *See Daubert*, 509 U.S. at 590–91; *Kumho*, 526 U.S. at 149.

Gering summarizes, in a footnote, his methodology regarding the 67% deduction for all back end profits.  *See* Gering Report at 13 n.25.[9]  Gering's 67% reduction for back end profits appears to be based on testimony at trial that a purchase of DIG back end services costs $100, while the front end services cost only $10.  *Id.* (citing April 30, 2008 Jury Trial Transcript).  However, as Gering notes, by this calculation the back end actually accounts for 91% of profits for a customer purchasing one website.  *See id.*  But Gering also notes that the price of two websites is $150.  *Id.*  He settles on the calculation that the back end accounts for 2/3 (i.e. $100/$150) of profits.  *Id.*

Gering's methodology regarding the 50% deduction of the remaining front end profits is based on the trial testimony of ConsulNet's liability expert Hokkanen.  *Id.* at 13-14.  Hokkanen testified that DIG's front end is made up of two pages; that the jury found

---

[9] That footnote reads:

67 percent = $100/$150.  The profits attributable to the "back end" of the technology for a customer purchasing one site would be 91 percent ($100/$110).  "The pricing of the sites are $100 for the back end.  We always run a deal where it's $110 for the back end and one front end.  And then for an additional $40, it's $150 for two sites" (Jury Trial Transcript dated April 30, 2008, p. 82).

that DIG did not infringe on ConsulNet's front homepage; and that the homepage is

typically thought of as the most important web page of a website.  *Id.*  Gering, therefore,

concludes that a 50% deduction of DIG's front end revenues is appropriate.  *Id.*

The methodology of Gering's calculations regarding apportionment is not

adequately reliable.  The 67% calculation is lacking because a) it assumes that the $40

extra for the second website (which represents the difference between the $110 price of

one back end and front end and the $150 price for two sites) is entirely used to pay for

front end services, even though (according to Gering himself) a single front end only

costs $10, and b) it assumes that all customers are purchasing two websites.  The 50%

calculation is unreliable because it is corroborated by little more than speculation that the

non-infringing website was equally or more important than any other page.  Gering, in his

deposition, stated that he did not do "any . . . analyses" to arrive at his 50% calculation

other than to look at Hokkanen's testimony, which Gering represented as stating "that the

front page is more important and his analysis basically talks about a front page and a

second page."  Pl. Mot. Limine Exh. 5 at 15 (Gering Deposition).  Neither of Gering's

calculations regarding apportionment is methodologically precise enough to satisfy Rule

702.

Additionally, Gering's initial assumption that the back end of the technology can

be completely deducted from DIG's revenue is not adequately qualified.  Gering states

that the back end "is not at issue in this matter and was not addressed by ConsulNet's

liability experts" Gering Report at 13.  But Gering bases this view on one offhand

statement made by ConsulNet's counsel at trial.  In doing so, Gering neglects to

acknowledge that this court, on the record, rejected defendants' request to separate the

front end from the back end of the websites when it presented to the jury the question of

liability for breach of contract.  *See* Trial Transcript at 119-121.  There is no further

indication that the front end and back end of the websites are entirely distinct from each

other for damages purposes.

It is relevant to damages that defendants did not infringe on all of ConsulNet's

webpages.  Thus, defendants should be permitted, through testimony at the damages trial,

to offer evidence of their non-infringing web products.  However, Gering's analysis of

this issue should not be admitted as expert testimony.


*4.  Expert Testimony Based on Gering's Conversations with Moore, Affidavits,*
*Depositions, and Other Non-Record Testimony*

ConsulNet seeks to exclude any of Gering's analysis that is based on conversations

that took place between Gering and defendant Moore subsequent to this Court's May 1,

2008 Order.  That Order, which the parties stipulated to, allowed for "limited discovery"

about DIG's expense report prior to the trial on damages.  *See* Docket No. 185.

According to ConsulNet, telephone conversations between Gering and Moore

constitute discovery that was not permissible under the May 1, 2008 Order.  Because

ConsulNet was not able to depose Moore about these conversations, ConsulNet alleges

that it has been put in an unfair position because it will be forced to question Moore about

DIG's expenses for the first time during cross-examination.  Furthermore, ConsulNet

contends, Gering's report is unreliable under *Daubert v. Merrell Dow Pharm., Inc.*, 509

U.S. 579 (1993)*,* because it represents little more than a recital of Moore's point of view

regarding which business expenses were legitimate and which ought to be characterized

as either fixed or variable.

      An expert may base her opinion on any facts or data "perceived by or made known

to the expert at or before the hearing" regardless of whether the facts or data themselves

are admissible.  F.R.E. 703.  Therefore, while an additional deposition of Moore might

hypothetically have contravened this court's scheduling order, there was nothing barring

Gering from basing his opinion on conversations with Moore.

      Nevertheless, a trial court has, since *Daubert*, a general "gatekeeping role with

regard to experts" that requires it to review whether an expert has "good grounds on

which to find the data reliable.**"**  *In re Paoli R.R. Yard PCB Litigation,* 35 F.3d 717, 748

(3d Cir. 1994).  Had Gering based his opinions solely on Moore's unsubstantiated

viewpoints in the phone conversations, this court's gatekeeping function might have

required the exclusion of Gering's testimony.  However, Gering has adequately stated

other grounds for his opinions besides his conversations with Moore.

      With respect to business deductions, Gering has stated that he had "gone through"

the financial data and "formed preliminary thoughts and opinions on it" before speaking

with Mr. Moore.  *See* Def. Resp. to Pl. Mot. Limine Exh. A at 12 (Excerpts of Gering

Deposition), Docket No. 234 (filed Oct. 30, 2008).  Because Gering has apparently

substantiated his opinion using the various receipts and financial evidence produced by

defendants, this court is not in a position, prior to trial, to find that Gering did not have

good grounds for his report regarding business expenses.  ConsulNet may undertake to

demonstrate the weakness of Gering's views during cross-examination.  *See Daubert*, 509

U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking

shaky but admissible evidence.")

     So too with Gering's analysis of fixed versus variable costs.   Contrary to

ConsulNet's contention, Gering's deposition reveals that, in addition to speaking with

David Moore, Gering had numerous reasons for characterizing certain expenses as either

fixed or variable (e.g. the amount of the expense, whether or not an expense was

increasing over time, the nature of DIG's business, etc.).  *See* Pl. Mot. Limine Exh. 5 at 19

(Gering Deposition).

     Nor should this court exclude parts of the Gering report that cite to deposition

testimony or affidavits, even where such testimony was excluded from the trial on

liability.  Again, Rule 703 expressly permits experts to rely on inadmissible evidence.

The main concern of Rule 703 regarding placing limits on experts' use of inadmissible

evidence deals with determining what evidence should or should not reach a jury.  This damages trial is a bench trial.  Accordingly, there is no need to limit Gering's testimony because it is based on inadmissible evidence, depositions, or affidavits.  ConsulNet provides this court with no legal authority to suggest otherwise.

However, this court will grant ConsulNet's request to exclude the portion of Gering's report that refers to a statement by ConsulNet's counsel.  That statement is not evidence in the case and is of no assistance to the trier of fact.

### III. Defendants' Motions

Defendants have filed three separate motions in limine.  The first (Docket No. 228) seeks to exclude the report of ConsulNet's expert witness Raymond F. Dovell, on the grounds that the report was submitted late.  The second (Docket No. 229) seeks to exclude certain portions of the errata sheets submitted by ConsulNet in the wake of ConsulNet expert Wayne D. Hoeberlein's deposition on August 11, 2008, on the grounds that those errata unacceptably alter Hoeberlein's testimony.  The third (Docket No. 230) seeks to preclude ConsulNet's experts from providing any expert testimony regarding damages alleged by ConsulNet in connection with ConsulNet's providing free websites to its Platinum level clients, on the grounds that there is inadequate evidence to support ConsulNet's position on this issue.

*1.  The Dovell Report*

Defendants argue that Dovell's expert report was submitted later than was permissible under this court's May 1, 2008 order.  That order did indeed state that ConsulNet was to submit any expert reports by June 30, 2008.  *See* Order ¶5(c), Docket No. 185.  More specifically, this court's order stated, in pertinent part:

> 5.   The parties shall engage in a limited period of discovery relating solely to defendants' document bates labeled DIG 0032628 (the "DIG Expense Sheet").   This discovery period shall be as follows . . .
> . . . (c) plaintiff shall submit any additional damages expert report on or before June 30, 2008;
> (d) defendants shall submit any additional or supplemental/rebuttal damages expert report on or before July 30, 2008; and
> (e) any expert depositions shall be completed on or before August 15, 2008.

Plaintiff ConsulNet submitted a damages report by its expert Wayne Hoeberlein on June 30, 2008.  Defendants submitted the Gering Report on July 30, 2008.  Then, on August 11, 2008, plaintiff submitted the Dovell report.  As a purely formal matter, the Dovell report was indeed submitted later than the deadline that this court decreed for plaintiff's expert  reports.

In the Third Circuit, certain "basic considerations" underlie a court's decision whether or not to allow a party to call a witness:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the

-17-

court's order.

*Meyers v. Pennypack Woods Home Ownership Assn.,* 559 F.2d 894, 904-5 (3d Cir. 1977) (reversing a district court's decision to exclude testimony by a witness not named in appellant's pretrial memorandum).  Other important factors in this determination include the ability to have discovered the witness earlier, the validity of the excuse, and any intent to mislead.  *Id.* at 904.

In the instant matter, almost all of these factors weigh in favor of admissibility. First, defendants will hardly be prejudiced by Dovell's testimony.  Defendants received the Dovell report and subsequently deposed Dovell more than three months prior to trial. Second, plaintiff took steps to cure any prejudice by providing defendants ample notice of the Dovell report.[10]  Importantly, Gering stated during his deposition that he had reviewed the Dovell report and did not plan to make any revisions of his own expert report.  *See* Pl. Repl. Def. Mot. Limine Exh. F (Excerpts of Gering Deposition) at 16.  Third, plaintiff listed Dovell as a witness in its pretrial memorandum, making this case considerably less problematic than *Meyers*.  Fourth, although defendants contend that ConsulNet willfully ignored the court's order, there is no affirmative evidence of any bad faith on plaintiff's

---

[10]     ConsulNet provided defendants notice on July 16, 2008, before the deadline for defendants' expert reports, that a rebuttal report by Dovell might be forthcoming. Defendants subsequently requested information about Dovell on July 22, 2008, and later deposed Dovell. *See* Pl. Repl. Def. Mot. Limine Exhs. A-E (correspondence between the parties).

part; to the contrary, ConsulNet contacted defendants to make them aware of Dovell prior to the deadline for defendants' expert reports. *See* note 8, *supra*. The only factor in favor of exclusion is that, in light of the burden-shifting structure in copyright law, defendants probably should have foreseen that they would need a rebuttal expert.

Exclusion of evidence is an extreme sanction. Defendants, however, argue that this case is no more extreme than *Moore v. Vangelo*, 2005 WL 2178885, at *8 (E.D. Pa. Sept. 6, 2005) (Pratter, J.), in which the court, granting summary judgment, explains in a footnote that it excluded an expert report provided two months after the court's scheduling order called for the production of any expert reports. The Dovell report was submitted six weeks after the deadline for plaintiff's expert reports.

The Dovell report was, however, provided before the close of expert discovery on August 15, 2008. More importantly, this court is considering a motion *in limine*. Unlike *Moore*, where Judge Pratter was deciding a motion for summary judgment, any potential prejudice can be – and indeed has been – substantially cured by defendants' opportunity to depose the witness prior to trial. The instant matter is therefore more akin to *Soufflas v. Zimmer*, 474 F. Supp. 2d 737, 745 (Robreno, J.), in which the court admitted an expert report submitted late because it was "in the nature of a rebuttal report" and because the case had "not yet been listed for trial[,]" which allowed the defendant "ample time to procure an expert in rebuttal or to have its experts supplement their reports." Judge Robreno observed in *Soufflas* that "exclusion is disfavored unless the opposing party has

-19-

shown that there is no reasonable explanation for delay, or its legal position is irreparably prejudiced, or the administration of justice will be greatly burdened." *Id.* at 745 n. 4. This court will therefore admit Dovell's report.


*2. Errata*

ConsulNet expert Wayne D. Hoeberlein was deposed on August 11, 2008. Subsequently, ConsulNet submitted errata sheets for that deposition. Defendants challenge one of ConsulNet's proposed errata on the grounds that it contradicts and attempts to rewrite Hoeberlein's actual deposition testimony. The relevant portion of the original deposition reads:

> Q. Did you look at any documents from ConsulNet to confirm or verify or look at whatever kind of recurring or incremental costs were recurring for ConsulNet?
> A. No.

Def. Mot. Limine Exh. A (Excerpt of Hoeberlein Deposition) at 40, lines 19-24, Docket No. 229-2 (filed October 15, 2008). ConsulNet submitted the following errata as an addition at page 40, line 24:

> NOT SPECIFICALLY RECORDS RELATING TO INCREMENTAL COSTS. I DID, HOWEVER, REVIEW THE CONSULNET CLIENT DATABASE WHICH REFLECTS THE NUMBER OF CONSULNET CLIENTS FROM TIME TO TIME DURING THE DAMAGES PERIOD IN THIS CASE. MY RECOLLECTION IS THAT THE TOTAL NUMBER OF CLIENTS REMAINED FAIRLY STEADY DURING THE PERIOD, WHICH SUPPORTS MR. RAITT'S DISCUSSION WITH ME THAT EXPENSE LEVELS HAVE NOT MATERIALLY CHANGED DURING THE DAMAGES PERIOD.

Def. Mot. Limine Exh. B at 1, Docket No. 229-2 (filed October 15, 2008).

Defendants rely on Tenth Circuit precedent for their contention that errata may not materially alter deposition testimony.  In *Burns v. Board of County Comm'rs Jackson County*, 330 F.3d 1275 (10th Cir. 2003), the Tenth Circuit held that F.R.C.P. 30(e), which provides procedures for making changes to a deposition transcript,

> cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.

330 F.3d at 1282 (citations omitted).

*Burns* represents a strict approach to Rule 30(e) that has been adopted by a minority of courts.  In contrast, the majority rule is that a deponent may "make changes that contradict the original answers given, even if those changes are not supported by convincing explanations, as long as the deponent complies with the instructions provided within the rule itself for making such changes."  *Reilly v. TXU Corp.,* 230 F.R.D. 486, 491 (N.D. Tex. 2005) (citing 8A Wright & Miller Federal Prac. and Proc. § 2118).[11]

---

[11] F.R.C.P. Rule 30(e) reads:

(e) Review by the Witness; Changes.

> (1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

> > (A) to review the transcript or recording; and

Under this broad view, both the new answers and original answers remain part of the evidentiary record properly considered by a district court. *See, e.g., Podell v. Citicorp Diners Club, Inc.,* 112 F.3d 98, 101 (2d Cir. 1997).

In any event, *Burns*, as well as the other cases cited by defendants, dealt with a district judge's decision not to consider errata when deciding a motion for summary judgment. Here, in contrast, ConsulNet's errata were submitted prior to trial. One court has noted this distinction and suggested that "'Rule 30(e) challenges only face a heightened standard of review if they have the potential to affect summary judgment'" and not when the deponent will be available to testify at trial. *Reilly,* 230 F.R.D. at 491(quoting *Summerhouse v. HCA Health Services of Kansas*, 216 F.R.D. 502, 508 (D. Kan. 2003)). *Reilly* observed that applying the broad view of Rule 30(e) in the context of a pre-trial motion *"furthers the purpose of the discovery process – to allow the parties to elicit the true facts of a case before trial . . . while implementing adequate safeguards to prevent abuse, including maintaining a record of the changes." Id.* at 490. Because Hoeberlein will be available to testify at trial regarding ConsulNet's proposed errata, the reasoning of *Burns* is inapposite, and this court will not bar the errata.

---

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

*3.  The Free Websites*

Sometime after DIG began its infringement of ConsulNet's website, ConsulNet decided to provide free websites to some of its high-level customers, called "Platinum" clients.  At trial, ConsulNet president Steve Raitt testified that he made the decision to provide the free websites based on a conversation he had with Craig Proctor.  In that conversation,  Proctor suggested that ConsulNet should offer the free websites in order to prevent Platinum clients from canceling their services with ConsulNet and switching to DIG.  ConsulNet expert Hoeberlein claims damages of $460,881 stemming from ConsulNet's decision to provide these free websites.  Defendants seek to preclude this testimony, as well as potential testimony by either Proctor or Raitt, under Federal Rules of Evidence 402 and 403.

Defendants allege that the only basis for this damages claim is the speculation of Craig Proctor that was conveyed to Steve Raitt.  Defendants claim that ConsulNet has presented no further evidence drawing any causal link between DIG's infringement and the provision of the free websites.  More generally, defendants argue that all the evidence of record (including ConsulNet's steady number of clients and retention rate) suggests that DIG's provision of similar services had no impact on ConsulNet's business.  Therefore, defendants argue, the Hoeberlein report has no meaningful evidence to support the claim that DIG's infringing activities were the cause of ConsulNet's providing free

websites to its clients.  Accordingly, defendants urge this court to preclude all evidence

related to the free websites – whether Hoeberlein's report or in-court testimony by Raitt

or Proctor – on the grounds that such evidence is irrelevant and more prejudicial than

probative.

The trial testimony of Proctor and Raitt is already on the record and was

considered by the jury in reaching its liability verdict.  *See* Trial Transcript of April 16,

2008 at 113-15 (Proctor's testimony); Trial Transcript of April 18, 2008 at 164-167

(Raitt's testimony).  Therefore, this court is already entitled to consider Proctor's and

Raitt's testimony.  Thus the only issue this court is called on to address is whether that

evidence, as presented by expert witness Hoeberlein, is either irrelevant or unduly

prejudicial.[12]  First, the evidence is plainly relevant to the issue of damages suffered by

ConsulNet.  Second, because this is a bench trial, and because this issue was already

addressed on the record at the liability stage, the danger of unfair prejudice is minimal.

The Hoeberlein report is admissible.


**Conclusion**

For the reasons stated above, the court will grant ConsulNet's motion in part and

deny defendants' motions in limine.  An appropriate order follows.

---

[12]     Defendants have not challenged this evidence on Rule 702, Rule 703 or
*Daubert* grounds.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CONSULNET COMPUTING, INC., d/b/a SUCCESS WEBSITE, <br><br>               Plaintiff <br><br> v. <br><br> MEGEL DAVID MOORE, et al., <br><br>               Defendants | CIVIL ACTION <br><br> No. 04-3485 |

**Order**

**AND NOW**, this 4th day of December, 2008, upon consideration of the motions *in limine* filed by defendants Dynamic Investment Group and Moore (Docket Nos. 228-230) and plaintiff ConsulNet Computing (Docket No. 227) and the responses in opposition (Docket Nos. 233, 234), and for the reasons stated in the accompanying memorandum, **IT IS ORDERED**:

1.    Plaintiff's motion *in limine* (Docket No. 227) is **GRANTED** in part and **DENIED** in part:

    a.    Richard Gering will not be permitted to offer an opinion based on his analysis apportioning damages into those stemming from the front end and back end of defendants' websites.  Defendants may, however, present testimonial evidence of profits stemming from their non-infringing web-products.

    b.    Richard Gering may not offer the following testimony at trial: "Opposing counsel states 'the AgentPanelGold code which the back end of which is really not at issue.'"

2.    Defendants' three motions *in limine* (Docket Nos. 228, 229, 230) are **DENIED.**

3.     The parties shall carefully instruct their own experts regarding the court's ruling in this order.


/s/ Louis H. Pollak
Pollak, J.